CTJ/wNOD

&

BY: _____

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2005 APR -8 PM 2: 39

CLERK OF COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS**

|  |  |
|---|---|
| MARIANO J. PIMENTEL, on behalf of himself and a Class of Judgment Creditors of the Estate of Ferdinand E. Marcos, <br><br> Plaintiff, <br><br> v. <br><br> B.N. DEVELOPMENT COMPANY, INC.; ELLESMERE INVESTMENT CORPORATION, INC.; JASON DEVELOPMENT COMPANY, INC.; LANGLEY INVESTMENT CORPORATION, INC.; PENDER INVESTMENT CORPORATION, INC.; REVELSTOKE INVESTMENT CORPORATION, INC.; and VERNON INVESTMENT CORPORATION, INC.; <br><br> Defendants. | Civil Action No. <br> **4-05 C V - 2 3 4 - Y** <br><br> **Complaint** <br><br><br> **Class Action** |

## COMPLAINT

### Nature Of Action, Jurisdiction And Venue

1.    Plaintiff, on behalf of himself and the Class, seeks a declaration that certain real property located in Tarrant County, Texas is beneficially owned by the Estate of Ferdinand E. Marcos; and for execution on said property pursuant to a final judgment rendered in the United States District Court for the District of Hawaii.

2.    This Court has jurisdiction of this matter pursuant to 28 U.S.C. §1332 in that Plaintiff is a citizen of the Republic of the Philippines permanently residing in Hawaii and Defendants are citizens of different states and countries and the amount in controversy exceeds $100,000 exclusive of interest and costs..

1272_1

# EXHIBIT 3

3. Venue is proper in this District pursuant to 28 U.S.C. §1391 in that defendants are deemed to reside in this District since they are titleholders to real property in this District and subject to personal jurisdiction in this District.

### Parties

4. Plaintiff Mariano J. Pimentel is a citizen of the Republic of the Philippines permanently residing in the United States in the State of Hawaii. He is a member of the Plaintiff Class which obtained a Judgment against the Estate of Ferdinand E. Marcos on February 3, 1995. A copy of the Judgment is attached as Exhibit "A." This Judgment has been affirmed by the United States Court of Appeals for the Ninth Circuit and is final. *See Hilao v. Estate of Ferdinand E. Marcos*, 103 F.3d 767 (9th Cir. 1996). This Judgment has been transferred to this District.

5. Plaintiff and the entire plaintiff class are judgment creditors of the Estate of Ferdinand E. Marcos and are owed in excess of $3.8 billion, including interest.

6. Defendant B.N. Development Company, Inc. ("BN") is a Texas corporation. BN is the record owner of a 921 acre parcel of real property located in Tarrant County which is described in Exhibit "B" hereto. It is the successor to Breton Investment Corporation, Inc., formerly known as Breton Property Corporation N.V., a Netherlands Antilles corporation, which acquired the property in separate transactions in 1977 and 1978.

6. Defendant Ellesmere Investment Corporation, Inc. ("Ellesmere"), formerly known as Ellesmere Investment Corporation N.V., is a Netherlands Antilles corporation which is qualified to do business in Texas. Ellesmere is the record owner of a 330 acre parcel of real property located in Tarrant County which is described in Exhibit "C" hereto.

2

1272_1

7.  Defendant Jason Development Company, Inc. ("Jason") is a Texas corporation. Jason is the record owner of a 605 acre parcel of real property located in Tarrant County which is described in Exhibit "D" hereto. It is the successor to Jasonville Investment Corporation, Inc., formerly known as Jasonville Investment Corporation, N.V., a Netherlands Antilles corporation, which acquired the property in 1986.

8.  Defendant Langley Investment Corporation, Inc. ("Langley"), formerly known as Langley Investment Corporation N.V., is a Netherlands Antilles corporation which is qualified to do business in Texas. Langley is the record owner of a 358 acre parcel of real property located in Tarrant County which is described in Exhibit "E" hereto.

9.  Defendant Pender Investment Corporation, Inc. ("Pender"), formerly known as Pender Investment Corporation, N.V., is a Delaware corporation which is qualified to do business in Texas. Pender is the record owner of a 890 acre parcel of real property located in Tarrant County which is described in Exhibit "F" hereto.

10. Defendant Revelstoke Investment Corporation, Inc. ("Revelstoke"), formerly known as Revelstoke Investment Corporation N.V., is a Delaware corporation qualified to do business in Texas. Revelstoke is the record owner of a 130 acre parcel of real property located in Tarrant County which is described in Exhibit "G" hereto.

11. Defendant Vernon Investment Corporation, Inc. ("Vernon"), formerly known as Vernon Investment Corporation, N.V., is a Netherlands Antilles corporation qualified to do business in Texas. Vernon is the record owner of a 946 acre parcel of real property located in Tarrant County which is described in Exhibit "H" hereto.

**Class Certification**

12. Plaintiff brings this action on his own behalf and as a class action under Rule 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the

3

Class certified in the *Ferdinand E. Marcos Human Rights Litigation*, MDL No. 840, which Class obtained a final judgment against the defendant Estate on February 3, 1995.

13.     The exact number of individuals in the Class is 9,539, and class counsel have represented the members of the Class for 19 years.  Most Class members reside in the Republic of the Philippines so that joinder of all Class members is impracticable.

14.     There are questions of law or fact common to the class:

      a)     Whether the parcels of real property were acquired with the assets Ferdinand E. Marcos;

      b)     Whether the parcels of real property are beneficially owned by the Estate of Ferdinand E. Marcos; and

      c)     Whether Plaintiff and the Class may execute, foreclose upon and sell the parcels and the mineral rights thereto in satisfaction of their judgment.

15.     Plaintiff is a member of the Class, plaintiffs' claims are typical of the claims of the Class members, and plaintiff will fairly and adequately protect the interests of the Class.

16.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications.

17.     Because the amount at issue is inadequate to satisfy the entire Judgment, individual adjudication could result in certain Class members' claims being paid while other Class members would receive nothing.

18.     The relief sought is applicable to each member of the Class.

19.     The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to declaratory judgment and execution.

4

20.     A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Treatment as a class action will permit this previously certified Class to adjudicate their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender.  This class action likely presents no difficulties in management that would preclude maintenance as a class action.  Finally, the Class is easily definable and one for which records exist.

### Cause Of Action

21.     Ferdinand E. Marcos served as President of the Republic of the Philippines from 1965 through February 1986 when he escaped to Hawaii following a revolution.

22.     Ferdinand E. Marcos died in Hawaii in September 1989.

23.     Beginning in the mid-1950's, Jose Yao Campos was a close financial advisor and confidante to Marcos who arranged for the investment of Marcos' assets.

24.     Since the 1960's, Marcos demonstrated a pattern and practice of investing his considerable wealth in investment properties while secreting and concealing his ownership through corporations established in tax havens.

25.     In the late 1970's and 1980's Campos arranged the acquisition of several thousand acres of real estate in Tarrant County, Texas for Marcos, purchasing the properties with Marcos assets and placing the properties in Netherlands Antilles corporations which were under Campos' control.

26.     In June 1977 and May 1978 1,041 acres in ten tracts were purchased and placed in the name of BN.  BN sold 149 acres leaving it with its present holding of 992 acres, which are described in Exhibit "B" hereto.

27.     In September 1977 946 acres in two tracts, described in Exhibit "H" hereto, were purchased by a straw party and transferred to Vernon.

5

1272_1

28.   In July 1978 890 acres, described in Exhibit "F" hereto, were purchased by a straw party and transferred to Pender.

29.   In November 1978 330 acres, described in Exhibit "C" hereto, were purchased and placed in the name of Ellesmere.

30.   In December 1978 358 acres, described in Exhibit "E" hereto, were purchased by a straw party and placed in the name of Langley.

31.   In April 1980 130 acres, described in Exhibit "G" hereto, were purchased by a straw party and placed, a month later, in the name of Revelstoke.

32.   In July 1985 605 acres, described in Exhibit "H" hereto, were purchased by a straw party and in November 1986 placed in the name of Jason.

33.   Marcos' personal assets, often from corporations or foreign foundations he owned and controlled, were used for the acquisition of all the above properties.

34.   After Marcos was removed from the Presidency of the Philippines, Campos asserted his ownership of the above properties to the exclusion of Marcos or his Estate which were the beneficial owners.

WHEREFORE, Plaintiff and the Class demand judgment in their favor and against the defendants:

A.   Declaring that the properties are beneficially owned by the Estate of Ferdinand E. Marcos;

B.   Ordering execution and foreclosure thereon for the partial satisfaction of the Class' Final Judgment;

C.   For such further and other relief as may be just and necessary.

6

PULS, TAYLOR & WOODSON, LLP

W. Kelly Puls
State Bar No. 16393350
Brant C. Martin
State Bar No. 24002529
2600 Airport Freeway
Fort Worth, Texas 76111
(817) 338-1717
(817) 338-1416 (Facsimile)

Of Counsel:

ROBERT A. SWIFT
Kohn, Swift & Graf, P.C.
One South Broad Street, Suite 2100
Philadelphia, PA 19107
(215) 238-1700
(to be admitted *pro hac vice*)

SHERRY P. BRODER
Attorney at Law - A Law Corporation
Davies Pacific Center
841 Bishop Street, Suite 800
Honolulu, Hawaii 96813
(808) 531-1411

Attorneys for Plaintiff Mariano J. Pimentel and the Plaintiff Class

7

1272_1

ROBERT A. SWIFT
Lead Counsel
Kohn, Nast & Graf, P.C.
2400 One Reading Center
1101 Market Street
Philadelphia, PA  19107
Telephone No.:  (215) 238-1700

Lead Counsel for Plaintiffs

SHERRY P. BRODER #1880
Liaison Counsel
Grosvenor Center, Suite 1800
733 Bishop Street
Honolulu, Hawaii  96813
Telephone No.:  (808) 531-1411

Liaison Counsel for Plaintiffs

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 3 - 1995

at _____ o'clock and _____ min. _____ M
WALTER A.Y.H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

|  |  |
|---|---|
| IN RE: | MDL NO. 840 |
| ESTATE OF FERDINAND E. MARCOS HUMAN RIGHTS LITIGATION | |
| CELSA HILAO, et al., | C.A. NO. 86-0390 |
| Plaintiffs, | FINAL JUDGMENT |
| v. | |
| ESTATE OF FERDINAND E. MARCOS, | |
| Defendant. | |

ATTEST: A True Copy
WALTER A.Y.H. CHINN
Clerk, United States District
Court, District of Hawaii
By _____ Deputy

## FINAL JUDGMENT

This action came on for trial before the Court and a jury, the Honorable Manuel L. Real, presiding, and the issues having been tried, and the jury having rendered its verdict on liability and damages,

The Court enters final judgment pursuant to FRCP 58 in favor of 135 randomly selected Class Claims and the Plaintiff Class

ATTEST: A True Copy
WALTER A.Y.H. CHINN
Clerk, United States District
Court, District of Hawaii
By _____

in accordance with the unanimous verdicts of the jury on September 24, 1992, February 23, 1994 and January 18, 1995 and the Court's Judgment on Liability as follows:

       1.    The Court incorporates herein its Judgment on Liability entered October 20, 1992 and its Order entered December 17, 1992 denying defendant's posttrial motions re liability.

       2.    Judgment for compensatory damages is entered for the below named randomly selected class claims as follows:

### Torture Subclass

| Claim No. | Victim Name | Amount |
|---|---|---|
| PT-4759, | Vitug, Dante B. | $ 75,000 |
| PT-2143, | Perlas, Estanislao P. | $ 30,000 |
| PT-3415, | Bognot, Servillano G. | $ 35,000 |
| PT-3996, | Vega, Angelo | $ 30,000 |
| PT-1643, | Palma, Ariel Revilla | $ 50,000 |
| HT-49, | Carino, Bartolome | $ 50,000 |
| PT-4758, | Valdez, Fortunato | $ 30,000 |
| PT-2915, | Baay, Edmundo | $ 20,000 |
| PT-555, | Gudayan, Arte | $ 30,000 |
| PT-535, | Butac, Roy | $ 30,000 |
| PT-3794, | Payacag, Candido B., Sr. | $ 50,000 |
| PT-2473, | Pineda, Bernardo | $100,000 |
| PT-1897, | Lamangan, Joel C. | $100,000 |
| PT-4603, | Sumabat, Maximiano, Jr. | $ 75,000 |
| PT-415, | Gardon, Antonio S. | $ 30,000 |
| PT-3770, | Ubod, Policarpio | $ 30,000 |

2

| | |
|---|---|
| PT-5007, De Ramos, Mariano B. | $ 20,000 |
| PT-5129, Tayag, Jean C., | $100,000 |
| PT-3624, Diamante, Crisostomo D. | $ 20,000 |
| PT-5057, Anober, Nemesio, Sr. | $ 30,000 |
| PT-3599, Flores, Jorge Estioca, | $ 75,000 |
| PT-2727, Cerenado, Fidel D., | $ 50,000 |
| PT-4970, Rafales, Porferio O. | $ 50,000 |
| PT-3108, Ador, Julio | $ 50,000 |
| PT-3035, Calizo, Josue S. | $ 50,000 |
| PT-2279, Miraflor, Antonio | $ 50,000 |
| PT-006, Gipalaga, Iniego | $ 75,000 |
| PT-3153, Delmonte, Gemma B. | $ 20,000 |
| PT-3715, Cordero, Leopoldo | $ 50,000 |
| PT-3267, Paredes, Efraim. | $ 50,000 |
| PT-1052, Depalco, Joey | $ 30,000 |
| PT-3716, Carlos, Winnie | $ 10,000 |
| PT-1318, Margate, Balbino C. | $ 30,000 |
| PT-1688, Cordero, Roberto | $ 20,000 |
| PT-4450, Mercader, Jerry A. | $ 65,000 |
| PT-3407, Banares, Ely L. | $ 30,000 |
| PT-3490, Segui, Josepito C. | $ 50,000 |
| PT-4022, Bitancor, Romeo R. | $100,000 |
| PT-2185, Regio, Bernardo R. | $ 30,000 |
| PT-4698, Edralin-Tiglao, Raquel | $ 50,000 |
| PT-1868, Roque, Fiolino | $ 75,000 |
| PT-2593, Sambajon, Domingo | $ 30,000 |

3

| | |
|---|---|
| PT-3049, Dolosa, Ramon | $ 30,000 |
| PT-2344, Baez, Marcelino | $ 30,000 |
| PT-1645, Pution, Roberto | $ 75,000 |
| PT-3362, Nacario, Melchor F. | $ 30,000 |
| PT-1175, Fajardo, Wilfredo F. | $ 50,000 |
| PT-3080, Ramirez, Juanito C. | $ 25,000 |
| PT-1205, Masangkay, Mariano R. | $ 75,000 |
| PT-2094, Camuta, Jose, | $ 30,000 |
| PT-2598, Villanueva, Benigno | $ 20,000 |
| PT-252,  De los Angeles, Alexander | $100,000 |
| PT-344,  Demelino, Matilde A. | $ 20,000 |
| PT-3687, Salvana, Estrella | $ 30,000 |
| PT-4440, Kasim, Abdul | $ 65,000 |
| PT-3894, Dionsay, Antonio | $ 75,000 |
| PT-2317, Umpad, Romeo B. | $ 30,000 |
| PT-3531, Cowak, Fredie | $ 30,000 |
| PT-2584, Pabilani, Jose | $ 50,000 |
| PT-757,  Aspirin, Ceriaco | $100,000 |
| PT-3873, Bolastiq, Junnie T. | $ 75,000 |
| PT-3658, Madendog, Pilot | $100,000 |
| PS-3031, Usman, Motalib | $ 40,000 |
| PT-518,  Rebullido, Felixburt | $ 50,000 |
| PT-4985, Deri, Raul G. | $ 85,000 |
| PT-5093, Kiram, Linding | $ 30,000 |
| PT-4516, Sela, Eling | $ 30,000 |

### Summary Execution Subclass

| | |
|---|---|
| PS-2036, Alcantara, Bartolome | $130,000 |
| PS-460,  Hara, Juliana Isipin | $ 93,667 |
| PS-1125, Aggabao, Orlando | $135,000 |
| PD-118,  Manog, Uldarico C. | $134,533 |
| HS-17,   Figuerres, Alfonso C | $128,533 |
| PS-2416, Mijares, Luis Manuel | $140,000 |
| PS-3339, Salasol, Saliguidan | $ 95,833 |
| PS-292,  Ganacias, Alberto | $148,000 |
| PS-209,  Bucag, Renato | $175,000 |
| PS-684,  Cabayao, Salvador J. | $ 79,042 |
| PS-1629, Gumarang, Agrifino, Jr. | $ 81,667 |
| PT-2855, Jimenez, Samuel | $103,667 |
| PS-194,  Falsis, Melchor | $ 78,555 |
| PT-5049, Belleza, Alberto | $ 90,000 |
| PS-695,  Davantes, Reginaldo F | $105,000 |
| PS-1048, Llabres, Antonio | $ 85,000 |
| PS-1218, Ceron, Juan Z. | $101,700 |
| PS-2220, Mokamad, Magsaysay H | $ 85,000 |
| PS-1852, Dimatingkal, Tayong | $ 90,000 |
| PS-2996, Kadatuan, Ibrahim | $150,000 |
| PS-2230, Saban, Kubaid | $ 90,000 |
| PS-276,  Kindao, Kamilan | $110,000 |
| PS-2503, Mamalinta, Hadji Samad | $ 95,000 |
| PS-2943, Kamad, Samama | $130,000 |
| PS-3153, Faks, Samad | $125,000 |

5

| | |
|---|---|
| PS-2005, Gamba, Alamanso | $ 90,250 |
| PS-3053, Orangotan, Saaban | $125,000 |
| PS-3294, Bada, Kanakan | $150,000 |
| PS-2164, Dapak, Musa | $115,278 |
| PS-1966, Nacua, Alejandro | $110,000 |
| PS-617, Orcullo, Alexander L. | $160,000 |
| PS-1128, Baloro, Bonifacio | $100,000 |
| PS-425, Baloro, Lucia | $100,000 |
| PS-2794, Abudllah, Abas | $125,000 |
| PS-2278, Anti, Kandog | $145,000 |
| PS-2027, Kasim, Dakungan | $150,000 |
| PS-278, Malicay, Manolo | $126,111 |
| PS-2869, Magit, Tammo | $ 75,000 |
| PS-2509, Mama, Kabalukan | $125,000 |
| PS-3248, Panalay, Aminola | $125,000 |
| PS-3311, Parasan, Salaban | $175,000 |
| PS-2369, Talib, Asim | $180,000 |
| PS-3074, Tunggal, Toto | $185,000 |
| PS-1720, Alipoplo, Paglas | $119,444 |
| PS-1008, Albaira, Demetrio | $ 90,000 |
| PS-066, Regalado, Marife | $ 93,611 |
| PS-2366, Taha, Macmod | $162,000 |
| PS-692, Casia, Saturnino | $130,000 |
| PD-331, Giente, Enrique Alegando | $140,000 |
| PS-2088, Hamoy, Socrates G. | $111,250 |
| PS-1716, Acaso, Crisanto, Jr. | $ 81,944 |

6

### Disappearance Subclass

| | | |
|---|---|---|
| PT-1772, | Wyco, Lucilo | $119,250 |
| PD-552, | Kamsa, Sulaiman | $108,005 |
| PD-349, | De la Cruz Nazareno, Ernesto | $ 57,600 |
| PD-501, | Buenaventura, Jonny | $ 67,083 |
| PS-2970, | Omar, Abdullah | $103,583 |
| PD-770, | Maranao, Kutu | $ 55,000 |
| PD-556, | Madi, Maquid | $125,000 |
| PS-3075, | Kuda, Minundas | $ 90,903 |
| PD-053, | Albiso, Miguel | $110,000 |
| PD-385, | Bodiongan, Urbano G. | $ 87,500 |
| PD-426, | Andayao, Bodo | $ 65,000 |
| PD-663, | Dalgan, Maglib | $ 87,222 |
| PD-903, | Pena, Batokan | $115,000 |
| PD-684, | Dumpao, Usman | $ 50,000 |
| PD-995, | Guardo, Decoroso C. | $105,000 |
| PD-723, | Esmael, Uting | $ 80,000 |
| PD-740, | Abdulgani, Singapol | $110,000 |

3. Judgment for compensatory damages is entered for the remaining members of the Plaintiff Class as follows:

a. for the remaining Plaintiff Subclass of all current citizens of the Republic of the Philippines, their heirs and beneficiaries, who between September 1972 and February 1986 were tortured while in the custody of the Philippine military or para-military groups in the aggregate of $251,819,811.00 to be divided pro rata.

7

b.   for the remaining Plaintiff Subclass of all current citizens of the Republic of the Philippines, their heirs and beneficiaries, who between September 1972 and February 1986 were summarily executed while in the custody of the Philippine military or para-military groups in the aggregate of $409,191,760, to be divided pro rata.

c.   for the remaining Plaintiff Subclass of all current citizens of the Republic of the Philippines, their heirs and beneficiaries, who between September 1972 and February 1986 disappeared (and are presumed dead) while in the custody of the Philippine military or para-military groups in the aggregate of $94,910,640, to be divided pro rata.

4.   Judgment for exemplary damages, to make an example for the public good, is entered in the aggregate of $1,197,227,417.90 to be divided pro rata among all members of the Plaintiff Class.

5.   ~~Judgment for prejudgment interest at the rate of 10%~~ per annum is entered on the compensatory damage award of $766,778,442 from the date the Class Complaint was filed, April 7, 1986, until the date final judgment is entered, to be divided pro rata among all members of the Plaintiff Class.  The Court finds that prejudgment interest is necessary to compensate plaintiffs for the diminution in their award due to the significant lapse of time between their injuries and the entry of judgment, the effects of inflation, and the devaluation of the Philippine Peso relative to ~~the US dollar.   The Court further finds that Hawaiian law~~

authorizes prejudgment interest for personal injury awards at 10% per annum; that the manifest objectives of international law are served by making human rights victims whole for their injuries; that the Torture Victim Protection Act does not address this point; that Philippine law, by authorizing prejudgment interest in certain circumstances, is not offended by the award of interest for jus cogens violations of international law; and that the law of Hawaii, where Ferdinand E. Marcos resided between 1986 and 1989, is the appropriate law to apply on this point.

6.     Pursuant to FRCP 54(d)(2)(B), the Court orders that Class Plaintiffs (and their attorneys') claim for counsel fees and their submission in support thereof be deferred and postponed until further order of the Court.

7.     Pursuant to FRCP 54(d)(1), Class Plaintiffs are awarded costs previously taxed by the Clerk together with such costs incurred since then as the Clerk may tax.

8.     Plaintiffs' Motion to Amend the Pleadings is granted, and Count 2 of the Consolidated Amended Complaint is deemed amended to state a claim for relief for a permanent injunction.

9.     Plaintiffs' Motion for Entry of a Permanent Injunction is granted.

a.     The Court finds, based upon all evidence submitted in this litigation:

(1)  Plaintiffs have succeeded on the merits of this litigation and the judgment herein exceeds the assets of the

9

defendant Estate, both the amount admitted by the defendant and the amount proved by Plaintiffs.

(2)  Beginning as early as 1968, **Ferdinand E. Marcos** and Imelda R. Marcos established secret bank accounts under alias names and the use of Liechtenstein foundations in various countries with banking secrecy laws, including Switzerland.

(3)  Ferdinand and Imelda Marcos engaged in a sophisticated pattern and practice of secreting their assets, periodically laundering those assets in various countries, and re-depositing the monies in Swiss bank accounts in the names of multiple Liechtenstein foundations.

(4)  Federal courts have twice enjoined the transfer of Marcos assets finding a pattern and practice of secreting their assets, and the courts of appeals have thrice affirmed the injunctions. See <u>Hilao v. Estate of Ferdinand Marcos</u>, 25 F.3d 1467 (9th Cir. 1994), cert. denied ___ U.S. ___ (1/23/95); <u>Republic of the Philippines v. Marcos</u>, 862 F.2d 1355 (9th Cir. 1988); <u>Republic of the Philippines v. Marcos</u>, 806 F.2d 344 (2nd Cir. 1986).

(5)  Imelda Marcos and Ferdinand R. Marcos, the substituted legal representatives of the Estate, have never opened a probate proceeding, and opposed the opening of involuntary probate proceedings in the United States and the Philippines.

(6)  This Court previously found the deposition testimony of Imelda Marcos evasive as regards the amount and location of Estate assets.

(7)     There is a probability that the Estate has assets other than the foreign bank accounts identified by the Estate's legal representatives.

(8)     Imelda Marcos refused to consent to the disclosure of documents in the possession of Swiss banks.

(9)     Imelda Marcos collaterally attacked in Switzerland this Court's letters rogatory addressed to Swiss authorities requesting documents from Swiss banks.

(10) Credit Suisse and Swiss Bank Corporation were served with subpoenas in New York as ordered by this Court, but failed to produce any documents regarding Estate accounts in Switzerland.

(11) Imelda Marcos has vigorously defended this litigation and paid millions of dollars in legal fees.

(12) After issuance of the Preliminary Injunction in this litigation, Imelda Marcos and Ferdinand R. Marcos, on behalf of the Estate, entered into two agreements with the Republic of the Philippines in June 1992 to transfer and split all the assets of the Estate.

(13) The Republic of the Philippines has no judgment against the Estate, but has possession of millions of dollars of assets owned by or in which the Estate has an interest.

(14) Because the Plaintiffs' judgment exceeds the assets of the Estate, the heirs and beneficiaries of the Estate have no expectation of receiving any monies therefrom.

(15) Credit Suisse and Swiss Bank Corporation

11

continue to hold several hundred million dollars in accounts owned by or in which the Estate has an interest.

(16) The Republic of the Philippines is in privity of contract and acting in concert with the Estate to transfer and split the assets of the Estate.

(17) Credit Suisse and Swiss Bank Corporation are agents and representatives of the Estate.

(18) The Republic of the Philippines is an agent, representative, aider or abettor of the Estate.

(19) The defendant Estate, its legal representatives, Credit Suisse, Swiss Bank Corporation and the Republic of the Philippines received notice of the hearing for permanent injunction and had an opportunity to participate and present evidence.

(20) There is a substantial likelihood that the Marcoses' pattern and practice of transferring and secreting assets will continue and prevent the satisfaction of the judgment herein unless a permanent injunction is entered.

(21) The Plaintiffs have no adequate remedy at law.

b. The defendant Estate, and its agents, representatives, aiders and abettors are, until satisfaction of the judgment herein, permanently enjoined and restrained from directly or indirectly:

(1) transferring, conveying, encumbering, dissipating, converting, concealing, or otherwise disposing of in

12

any manner any funds, assets, claims or other property or assets owned actually, equitably or beneficially by, or in the possession or custody of or held by or in any way on behalf of or for the benefit of the Estate of Ferdinand E. Marcos; and

(2) destroying, mutilating, concealing, transferring, altering or otherwise disposing of in any manner any books, records, computer programs, computer files, computer printouts, correspondence, memoranda, brochures, or any other documents of any kind, or pertaining in any manner to Ferdinand Marcos, the Estate of Ferdinand Marcos or its representatives, except to their attorneys or in compliance with orders of this Court.

c. Non-parties Credit Suisse, Swiss Bank Corporation and the Republic of the Philippines are identified to this permanent injunction as agents, representatives, aiders or abettors of the defendant Estate and subject to its terms.

d. Plaintiffs' counsel may serve this permanent injunction upon legal counsel for the Defendant Estate, it appearing that the estate's legal representatives are currently outside the United States, as follows:

(1) On Imelda R. Marcos by service on her attorney Lex Smith by hand or facsimile; and

(2) On Ferdinand R. Marcos by service on his attorneys John Bartko by certified mail or facsimile.

10. Any monies collected by settlement or execution on judgments entered in any of the MDL 840 cases against the defendant

13

Estate shall be held and disbursed as directed by the Court.

11.  Pursuant to FRCP 23, the Court retains continuing jurisdiction over the Motion for Contempt, the Permanent Injunction, settlement, the distribution of any monies collected by settlement or execution, the determination of counsel fees, and any other matters as may properly come before the Court.


DATED:  ___1/27/95___

MANUEL L. REAL
MDL 840 Transferee Judge

14

B

# EXHIBIT "A"

Part of the John Sise Survey, Abstract No. 1434 and part of the J. Jennings Survey, Abstract No. 874, and part of the S.A. & M. O. R. R. Co. Survey, Abstract No. 927, and part of the Henry Lane Survey, Abstract No. 928; situated about 10-1/2 miles south from the courthouse in Tarrant County, Texas, and embracing the tract described in the deed to Edward Green, Trustee, recorded in volume 5323, page 747 of the Tarrant County Deed Records.

Beginning at the northwest corner of said John Sise Survey, in the middle of County Road No. 1078, whence a 3/4" iron rod bears south no degrees-11 minutes east 30 feet.

Thence south 89 degrees-45 minutes east, along the north line of the Sise Survey in said county road, 3506-8/10 feet to the west line of the right of way of the M. K. & T. Railway Co. whence a 1" iron rod bears south 8 degrees-25 minutes east 30-3/10 feet.

Thence south 8 degrees-25 minutes east, along said right of way line, at 2670-8/10 feet pass an old set stone in the south line of said Sise Survey and the north line of said S. A. & M. G. Railroad Co. Survey, and continuing in all 7914-6/10 feet to a 3/4" iron rod in the south line of the Henry Lane Survey.

Thence south 89 degrees-45 minutes west along said survey line, 1261-3/10 feet to a 3/4" iron pipe, a reentrant corner of said Lane Survey.

Thence south no degrees-28 minutes east 497-2/10 feet to a 3/4" iron pipe, a southeast corner of said Henry Lane Survey.

Thence south 89 degrees-45 minutes west along a south line of said Lane Survey, 709-8/10 feet to an old set stone, the northeast corner of the H. Lucas Survey.

Thence south 89 degrees-55 minutes west, continuing along a south line of the Lane Survey and the north line of the Lucas Survey, 1086-3/10 feet to the northerly line of the tract described in the deed to Texas Electric Service Co. recorded in volume 3529, page 464 of said Deed Records.

Thence north 85 degrees-10 minutes west, along the northerly line of said Texas Electric Service Co. tract, 1391-6/10 feet to a 1" iron rod for the southwest corner of said Green tract.

Thence north no degrees-05 ½ minutes east, to and along, the west line of the J. Jennings Survey, 1603-3/10 feet to a 1" iron rod in the southeast corner of the H. Walker Survey, Abstract No. 1622.

Thence north no degrees-03 minutes east, along the common line of the Walker and the Jennings Surveys, 2673-4/10 feet to a 1" iron rod, the northeast corner of said H. Walker Survey and a reentrant corner of said J. Jennings Survey.

Thence north no degrees-04 ½ minutes east 1,700-9/10 feet in a 1" pipe on the east side of an old

set stone in the south line of the H.Walker Survey and the north line of the J. Jennings Survey.

Thence west 223-2/10 feet to a 1" iron rod, the southwest corner of the Sise Survey and the southeast corner of the Charles Martin Survey, Abstract No. 1022.

Thence north no degrees-11minutes west, along the common line of said surveys, 2676 feet to the place of beginning and containing 742-636/1000 acres, of which 2-296/1000 acres are in County Road No. 1078, leaving 740-338/1000 acres exclusive of said road.  Of the 740-338/1000 acres 221-478/1000 acres are in the John Star Survey and 309 acres are in the J. Jennings Survey, and 68-8/10 acres are in the S. A. & N. G. R. R. Co. Survey and 141-1/10 acres are in the Henry Lane Survey.

EXHIBIT "A"

Being a tract or parcel of Land out of the H. Walker Survey, Abstract #1622, and the Henry Lane Survey, Abstract #927, situated about 11 miles South from the Courthouse in Tarrant County, Texas, and more particularly being a part of a certain 249.435 Acre Tract in said surveys, and this tract is described as follows:

BEGINNING at a 1" iron pin for the Northeast corner of said 249.435 Acre Tract, said iron pin also being the Northeast corner of the H. Walker Survey and a reentrant corner of the J. Jennings Survey, Abstract #875.

THENCE along the East line of said 249.435 Acre Tract and along a fence South 00°-06'25" East 2693.47 feet to the Southeast corner of said Walker Survey and the South-Southwest corner of said Jennings Survey in the North line of the Henry Lane Survey a 1" iron pin;

THENCE continuing along said East line of 249.435 Acre Tract and along said fence South, 00° 04'-25" East 1583.3 feet to a 1" iron pin, the Southeast corner of said 249.435 Acre Tract and the Northeast corner of the 13.23 Acre Tract described in a deed to Texas Electric Service Company, recorded in Volume 3539; page 342, of the Deed Records of Tarrant County, Texas;

THENCE along the common line between said tracts, North 85° - 22' - 05" West 2618.29 feet to a concrete monument for the Southwest corner of said 249.435 Acre Tract, and the Northwest corner of said Texas Electric Service Company 13.23 Acre Tract, said monument is in the East line of Farm to Market Highway #731;

THENCE North 00° - 02' West, along the East line of said Highway, and the West line of said 249.435 Acre Tract, a distance of 2860.1 feet to an Iron pin for corner in the North City Limits line of Crowley and the South City Limits line of Fort Worth;

THENCE North 89° - 44' - 30" East, along the common City Limits line, a distance of 1456.89 feet to an iron pin for corner;

THENCE North 00° - 02' West, 1194.84 feet to an iron pin for corner in the North line of said 249.435 Tract, same being the North line of said Walker Survey and the South line of the J.A. Gill Survey;

THENCE North 89° - 48' - 34" East along the North line of said 249.435 Acre Tract and the common line between said Surveys a distance of 1148.16 feet to the point of beginning and containing 209.435 Acres of Land, of which 31.497 Acres are in the City of Forth Worth and 177.938 Acres are in the City of Crowley.

Being a tract or parcel of Land out of the H. Walker Survey, Abstract #1622, and the Henry Lane Survey, Abstract #927, situated about 11 miles South from the Courthouse in Tarrant County, Texas, and more particularly being a part of a certain 249.435 Acre Tract in said surveys, and this tract is described as follows:

EXHIBIT "A"

All that certain tract or parcel of land situated in Tarrant County,
Texas, and being part of the Charles Martin Survey, Abstract #1022,
situated about 10 miles Southerly from the Courthouse in Tarrant
County, Texas, and embracing that portion of said survey conveyed to
J. B. Needham by the deed recorded in Volume 1738,page 84 of the
Tarrant County Deed Records which lies Easterly of the right of way
of State F. M. Highway #731, conveyed to the State of Texas by J. B.
Needham in the deed recorded in Volume 2011, page 406, of said Deed
Records;
BEGINNING at an iron for the Southeast corner of said survey, being
by deed call 3675 varas West from the Northwest corner of said the
Hiram Little Survey;
THENCE North 89 degrees 50 minutes 05 seconds West along the South
line of said Martin Survey, 2569.0 feet to an iron in the East line
of the right of way of said F. M. Highway, and being 72.8 feet from
the Southwest corner of said Survey;
THENCE Northerly, along said Highway right of way line, along a
curve to the Right with a radius of 2805.0 feet, a distance of 231.6
feet to an iron at its end; and then North 00 degrees, 06 minutes
32 seconds East 1377.6 feet to an iron at the beginning of a curve
to the Right, with a radius of 1372.5 feet; and then along said curve
to the Right 1085.1 feet to a stake at its end; and then North 47
degrees 54 minutes 25 seconds East 58.96 feet to a pipe for corner
in the South line of County Road #1078;
THENCE South 89 degrees 51 minutes 55 seconds East, along the South
line of said Road 2125.14 feet to an iron pin for corner in the East
line of said Martin Survey;
THENCE South 00 degrees 27 minutes West, along the East line of said
Martin Survey, 2629.37 feet to the place of beginning and containing
152.399 Acres of Land, of which 1.143 Acres is in the Drainage Channel
and 0.028 Acres is in the Texas Electric Service Company Easement,
leaving 151.228 Net Acres.  There is included in the above acreage
5105 sq. feet, or 0.117 Acres that lies between the fence encroachments
in the property line as shown by survey, leaving a balance of 151.111
Acres.

EXHIBIT "A"

VOL 7436 PAGE 656

VOL. 6616 PAGE 240
VOL. 6709 PAGE 782

EXHIBIT "A" - LEGAL DESCRIPTION

339.546 acres in two tracts situated in the William McCowan Survey, A-999, Tarrant County, Texas, being the same tracts conveyed to R. V. Brewer, et al, by deed recorded in Volume 6185, page 111, Tarrant County Deed Records said 339.546 acres being more particularly described by metes and bounds as follows:

TRACT I:

BEGINNING at an axle at the Southwest corner of said McCowan Survey and the Southeast corner of the H. Robertson Survey, A-1798, also being in the North line of the M. Gilbert Survey, A-565;
THENCE North 00 degrees 03' 13" E, 3295.22 feet;
THENCE North 59 degrees 29' 32" E at 8.2 feet pass a Texas Highway Dept. monument and continuing in all, 125.10 feet to a Texas Highway Dept. monument in the South ROW line of U. S. Highway No. 287;
THENCE along the South ROW line of said Highway No. 287, the following courses and distances;

        S 67 degrees 50' 43" E, 355.61 feet to a Texas
        Highway Dept. monument;
        S 63 degrees 41' 19" E, 418.25 feet to a Texas
        Highway Dept. monument;
        S 53 degrees 26' 55" E, 403.70 feet to a Texas
        Highway Dept. monument;
        S 46 degrees 19' 29" E, 3103.92 feet to a Texas
        Highway Dept. monument at the beginning of a non-tangent curve
to the right whose radius is 2844.79 feet and whose long chord bears S 38 degrees 21' 32" E, 793.14 feet;
Along said curve, in a Southerly direction, through a central angle of 16 degrees 01' 35", 795.73 feet to an iron pin at the end of said curve said point being in the North line of the T. Peck Survey, A-1209 and in the South line of said McCowan Survey;
THENCE S 89 degrees 30' 22" W, along the common line of said McCowan and Peck Surveys, passing the Northwest corner of said Peck Survey and the Northeast corner of said Gilbert Survey, and continuing in along the common line of said McCowan and Gilbert Surveys, in all, 3876.75 feet to the POINT OF BEGINNING and CONTAINING 173.676 acres of land.

TRACT II:

BEGINNING at a Texas Highway Dept. monument at the most Northerly Northeast corner of said Brewer, et al, tract, said point being in the West ROW line of I.H. Hwy. No. 35W;
THENCE S 00 degrees 02' 30" E, along said West ROW line, 2738.15 feet to a Texas Highway Dept. monument;
THENCE S 09 degrees 04' W, continuing along said West ROW line, 293.12 feet to a Texas Highway Dept. monument at the beginning of a non-tangent curve to the right whose radius is 290.74 feet and whose long chord bears S 67 degrees 04' 27" W, 492.35 feet;
THENCE along said curve, in a Southwesterly direction, through a central angle of 115 degrees 42' 46", 587.17 feet to a Texas Highway Dept. monument at the end of said curve, said point being in the North ROW line of U. S. Hwy. No. 287;
THENCE along the North ROW line of said Hwy. No. 287, the following courses and distances:

        N 55 degrees 34' 06" W, 434.61 feet to a Texas
        Highway Dept. monument;
        N 46 degrees 19' W, 3301.83 feet to a Texas
        Highway Dept. monument;
        N 39 degrees 14' 10" W, 402.77 feet to a Texas
        Highway Dept. monument;
        N 35 degrees 13' W, 285.27 feet to a Texas Highway
        Dept. monument;
        N 32 degrees 33' 05" W, 148.00 feet to an iron pin at the
most Northerly Northwest corner of said Brewer, et al, tract;
THENCE N 89 degrees 38' 30" E, 3742.87 feet to the POINT OF BEGINNING and CONTAINING 165.870 acres of land.

**EXHIBIT A**

**FIELD NOTES FOR THE T. S. MALLARD TRACT**

Being a part of the tract out of the James Rightly Survey, Abstract No. 1268, Tarrant County, Texas, conveyed to R. S. Mallard by deed recorded in Volume 1743, Page 483 of the Deed Records of Tarrant County, Texas, conveyed to R. S. Mallard by deeds recorded in Volume 2046, Page 434, Volume 1903, Page 343, Volume 2046, Page 436 and Volume 2288, Page 160, of the Deed Records of Tarrant County, Texas and being more particularly as follows:

BEGINNING at an iron pin at the intersection of the southwest right-of-way line of U. S. Highway No. 81 and 287 and the west right-of-way line of County Road No. 4109, said point being 25 feet westerly and 1205 feet northerly from the southwest re-enterant corner of said Righly Survey and the northeast corner of the said M. E. P. and P. R. R. Company survey, and the southeast corner of said tract recorded in Volume 1743, Page 483, of the Deed Records of Tarrant County, Texas;

THENCE S 0° 03' W with the west right-of-way line of County Road No. 4109, at 1180.4 feet, an iron pin in the north line of County Road No. 4047, at 1230.4 an iron pin in the south line of County Road no. 4047, in all 3888.2 feet to a "T" on concrete in said line being 25 feet west of the southeast corner of the said tract recorded in Volume 2046, Page 434 of the Deed Record of Tarrant County, Texas;

THENCE N 89° 37' W, with the south line of the tracts recorded in volume 2046, Page 434, Volume 1903, Page 343, and Volume 2046, Page 436, of the Deed Records of Tarrant County, Texas, a distance of 3711.7 fee to an iron pin at the southerly, southwest corner of the last above mentioned tract;

THENCE N 0° 55' W, 164.2 feet to an iron pin at the southeast corner of the said tract as recorded in Volume 2288, Page 160, of the Deed Records of Tarrant County, Texas;

THENCE N 89° 57' W, with the south line of the above said tract, 508.9 feet to an iron pin at the southeast corner of 2.0 acre tract previously conveyed;

THENCE N 0° 14' W with the east line of said 2.0 acre tract, 207.9 feet to an iron pin at the northeast corner of said 2.0 acre tract.

THENCE S 89° 45' W with the north line of said 2.0 acre tract and the north line of a 3.0 acre tract also previously conveyed, 1047.0 feet to an iron pin in the east line of County Road No. 4111, said point being 25 feet east of the west line of said M. E. P. and P. R. R. Company Survey;

THENCE N 0° 03' W, with the east line of County Road No. 4111, at 2294.8 feet, an iron pin in the south line of County Road No. 4047, and then passing the north line of said survey, and the south line of said Righly Survey, at 2344.8 feet, an iron pin in the north line of County Road No. 4047, and continuing N 0° 03' W with the east line of a north-south portion of County Road No. 4047, for a total distance of 3687.8 feet to an iron pin;

THENCE S 89° 50' W, 24.8 feet to an iron pin in the west line of said Righly Survey;

THENCE N 0° 02' W with said line, 1317.5 feet to an iron pin at a fence corner;

THENCE along the north line of said tract conveyed by deed recorded in Volume 1743, Page 483, of the Deed Records of Tarrant County, Texas; with the following courses and distances: S 89° 46' E, 2677.1 feet; N 41° 29' E, 25.2 feet and  N 89° 49' E, 724.0 to a point in the southwest line of said U. S. Highway Nos. 81 and 287 from which a Texas Highway Department right-of-way monument bears S 52° 33' E, 0.6 ft. and N 37° 27' E 0.3 ft.

THENCE S 52° 33' E with said highway right-of-way, 2298.9 feet to at an angle point in said line, from which a Texas Highway Department right-of-way monument bears S 52° 33' E 0.3 ft. and N 37° 27' E 0.3 ft.

THENCE S 26° 16' E, with said right-of-way line, 136.4 feet to the place of beginning and containing 610.67 acres of land.

VOL. 8777 PG. 1981

EXHIBIT "A"

VOL **6434** PAGE **961**

FIELD NOTES to a 358.351 acre tract of land being situated
in Tarrant County, Texas, and being out of the Henry Robertson
Survey, Abstract 1259, William Redfield Survey, Abstract 1348,
S. Lockhart Survey, Abstract 977, and George Matthews Survey,
Abstract 1078, and being a portion of the four tracts of land
described in deed recorded in Volume 3066, Page 88, Deed Records,
Tarrant County, Texas, and all of the tract of land described
in deed recorded in Volume 4497, Page 883, Deed Records,
Tarrant County, Texas; said 358.351 acre tract of land being
more particularly described as one tract of land by metes and
bounds as follows:

BEGINNING at a point in the Centerline of Hicks Road (County
Road No. 4005), in the North line of said Robertson Survey,
being the Northwest corner of "Tract 3" as described in deed
recorded in Volume 3066, Page 88, Deed Records, Tarrant County,
Texas, also being in the East Right of Way line of the G. C. &
S. F. Railroad tract of land;

THENCE South 89° 38' 54" East along said Centerline a distance
of 744.05 feet to a point;

THENCE South a distance of 25.0 feet, the Southline of said
Hicks Road, and a concrete monument in the West Right of Way
Line of U.S. Highway 81 & 287;

THENCE South 65° 48' East along said Right of Way a distance
of 137.11 feet to a concrete Highway monument;

THENCE South 41° 52' East along said Right of Way a distance
of 520.02 feet to a concrete Highway monument;.

THENCE South 46° 06' East along said Right of Way a distance
of 339.10 feet to a concrete Highway monument;

THENCE South 41° 52' East along said Right of Way a distance
of 2477.95 feet to a concrete Highway monument;

THENCE South 38° 09' East along said Right of Way a distance
of 384.68 feet to a concrete Highway monument;

THENCE South 47° 52' East along said Right of Way a distance
of 471.74 feet to a concrete Highway monument;

THENCE South 20° 58' East along said Right of Way a distance
of 140.12 feet to a concrete Highway monument in the West Right
of Way line of Farm to Market Road No. 156;

THENCE Along said Farm to Market Road No. 156 ROW and fence
South 00°00' 18" West a distance of 2158.07 feet to a point
in the South line of "Tract 1" described in deed recorded in
Volume 3066, Page 88, Deed Records, Tarrant County, Texas;

THENCE North 89° 50' 46" West along a fence line a distance
of 1323.61 feet to an axle for a corner, the Southwest corner
of said "Tract 1";

THENCE North 00° 09' 14" East along a fence line a distance of
208.61 feet to an axle in the North line of the George Matthews
Survey and the South line of the S. Lockhart Survey, also being
the Northwest corner of said "Tract 1";

THENCE North 89° 50' 46" West a distance of 2548.06 feet to
a point, the Southwest corner of said "Tract 3" described in
deed recorded in Volume 3066, Page 88, Deed Records, Tarrant
County, Texas, also being in the East line of said G. C. &
S. F. Railroad Tract of land;

vol. 6434 pace 962

THENCE North 01° 40' 32" East along a fenceline, the West
line of said "Tract 3", a distance of 5254.46 feet to a point
in the South line of said Hicks Road, in all a total distance
of 5279.46 feet to the Centerline of said Hicks Road, and the
Point of Beginning of this tract, containing 358.351 Total
Acres of land, having 0.427 acres in Hicks Road, and 1.377 acres
in a Channel Easement recorded in Volume 4641, Page 402, Deed
Records, Tarrant County, Texas, and leaving a Net Acreage of
356.547 acres of land more or less.

EXHIBIT "A"

**EAST TRACT** - east of Texas Electric Service Co. Right of Way
A part of the Benjamin Thomas Survey, Abstract No. 1497, and embracing a portion of the 637 acres tract described in the deed to W.R. Ross recorded in volume 758, page 39 of the Tarrant County Deed Records and a portion of the 302-8/10 acres tract described in the deed to W.R. Ross, as four tracts, recorded in volume 2221, page 478 of said Deed Records, situated just northwest of the City of Forth Worth in Tarrant County, Texas.

Beginning at a galvanized spike in County Road No. 4040 for a reentrant corner of the said Thomas Survey and the northwest corner of the G.T. Walters Survey, Abstract No. 1696 and being the most easterly northeast corner of said Ross 637 acres tract.

Thence south no degrees-15 minutes west, along the most easterly line of said Thomas Survey and Ross 637 acres tract and the west line of said Walters Survey, 25-42/100 feet to a 3/4" iron in the south line of said County Road No. 4040 for the north-east corner of the tract defined in the deed to Tarrant County recorded in volume 1247, page 418 of said Deed Records.

Thence along the north line of said Tarrant County tract and the south line of said County Road No. 4040 along a curve to the left with a radius of 555-13/100 feet, a distance of 265-8/10 feet a 1" iron at its end; then south 60 degrees-32 minutes-30 seconds west 357-6/10 feet to a 1" iron at the beginning of a curve to the right with a radius of 599-35/100 feet, then along said curve to the right a distance of 137-3/10 feet to a galvanized iron in the south line of said Ross 637 acres tract for the southwest corner of said Tarrant County Tract.

Thence north 89 degrees-37 minutes- 26 seconds west, along the south line of said Ross 637 acres tract and in County Road no. 4040, a distance of 1681-9/10 feet to a galvanized spike for the southeast corner of the tract defined in the deed to Texas Electric Service Company recorded in volume 2642; page 371 of said Deed Records.

Thence north no degrees-46 minutes-17 seconds east, along the east line of said Texas Electric Service Co. Tract, 4835-8/10 feet to a 1" iron in a north line of said Thomas Survey and the north line of said Ross 637 acres tract for the northeast corner of said Texas Electric Service Co. Tract in the south line of the J.N. Reed Survey, Abstract No. 1362.

Thence south 89 degrees-25 minutes-30 seconds east, along a north line of said Thomas Survey and Ross 637 acres tract and the south line of said Reed Survey, 30-4/10 feet to a 1" iron for the southeast corner of said Reed Survey and reentrant corner of the said Ross 637 acres tract and said Thomas Survey.

1

Thence north no degrees-14 minutes-06 seconds east, along the west line of said Thomas Survey and Ross 637 acres tract and the east line of said Reed Survey, 1646-5/10 feet to a 1" square iron for the northerly northwest corner of said Ross Tract.

Thence south 89 degrees-47 minutes-22 seconds east, along the north line of said Ross 637 acres tract to and along the north line of said Ross 302-8/10 acres tract, generally along a fence, 6601-2/10 feet to a concrete Texas Electric Service Co. monument in the west right of way line of U.S. Highway No. 81 and 287.

Thence along the west right of way line of said U.S. Highway No. 81 and 287, along a curve to the left whose center bears north 65 degrees-50 minutes-10 seconds east 3832 feet, a distance of 279-4/10 feet to a 5/8" iron for the northerly southeast corner of said Ross 302-8/10 acres tract.

Thence north 89 degrees-59 minutes-37 seconds west, along the northerly south line of said Ross 302-8/10 acres tract, 1355-4/10 feet to a 1" iron for a reentrant corner of said Ross 302-8/10 acres tract.

Thence south no degrees-01 minutes-15 seconds west, along the east line of said Ross 302-8/10 acres tract, generally along a fence, 3419-4/10 feet to a 1" iron for the southeast corner of said Ross 302/8/10 acres tract.

Thence north 89 degrees-44 minutes-42 seconds west, along the south line of said Ross 302-8/10 acres tract, 3436-7/10 feet to a 1" iron for the southwest corner of said Ross 302-8/10 acres tract in the east line of said Ross 637 acres tract

Thence south no degrees-07 minutes west, along the east line of said Ross 637 acres tract, 2486-7/10 feet to a 1" iron for a reentrant corner of said Ross 637 acres tract.

Thence south 89 degrees-44 minutes-42 seconds east, 344-4/10 feet to the place of beginning and containing 590-736/1000 acres exclusive of the 1-73/100 acres within County Road No. 4040, of the said 590-736/1000 acres, 1-81/100 acres are within the Old Ocean Fuel Co. Easement recorded in volume 3408, page 432 of said Deed Records, 0-77/100 of an acre is within the Lone Star Gas Co. Easement recorded in volume 5057, page 97 of said Deed Records and 0-33/100 of an acre is within the Lone Star Gas Co. Easement recorded in volume 3062, page 418 of said Deed Records leaving 587-826/1000 acres exclusive of County Road No. 4040 and said easements.

WEST TRACT - west of Texas Electric Service Co. Right of Way

A part of the D. F. McGarty Survey, Abstract No. 1079 and a part of the J. H. Simmons Survey, Abstract No. 1486, and a part of the Benjamin Thomas Survey, Abstract No. 1497 and embracing a portion of the 637 acres tract described in the deed to W.R. Ross recorded in volume 758, page 39 of the Tarrant County Deed Records, situated just northwest of the City of Forth Worth in Tarrant County, Texas.

2

Case 4:05-cv-00328 Document 164-6 Filed 06/03/2008 Page 33 of 37

Commence at a stone with a 3/4" pipe on its south side for the most westerly northwest corner of the said Simmons Survey and the southwest corner of said McCarty Survey and being the southwest corner of said Ross Tract, then run north no degrees-57 minutes-45 seconds east, along the west line of said McCarty Survey and Ross Tract, 280-35/100 feet to a 1" iron in the north line of State F-M Highway No. 1220 (Boat Club Road) for the most westerly southwest and beginning corner of the tract being described and being the southeast corner of Tract No. 4 defined in the deed to Lake Country Estates, Inc., recorded in volume 4999, page 142 of said Deed Records.

Thence continue along the west line of said McCarty Survey and Ross Tract and the east line of the J.N. Reel Survey, Abstract Tract No. 1314, and the east line of said Lake Country Estates, Inc., Tract No. 4, north no degrees 57 minutes-45 seconds east to and along the east line of Tract No. 4-A, defined in the deed to Lake Country Estates, Inc., recorded in volume 5234, page 105 of said Deed Records and the east line of the J.A. McNutt Survey, Abstract No. 1151, a distance of 2775-1/10 feet to a 1" iron for the northwest corner of said Ross Tract and the northeast corner of said Lake Country Estates, Inc., Tract No. 4-A and for the southwest corner of the W.E. Boswell Survey, Abstract No. 1852.

Thence south 89 degrees-18 minutes-35 seconds east, along the north line of said McCarty Survey and Ross Tract and the south line of said Boswell Survey, 1661 feet to a 5/8" iron on the southeast side of a 8" cedar post set in concrete for the south-east corner of said Boswell Survey and the southwest corner of the J.N. Reed Survey, Abstract No. 1362.

Thence continuing along the north line of said McCarty Survey and Ross Tract, south 89 degrees-25 minutes-30 seconds east, along the south line of said Reed Survey to and along the north line of said Simmons Survey, and a north line of said Thomas Survey, 2493-4/10 feet to the northwest corner of the tract defined in the deed to Texas Electric Service Company recorded in volume 2642, page 371 of said Deed Records, and from said corner the center of a Texas Electric Service Company monument bears east 0-25/100 of a foot.

Thence south no degrees-46 minutes-17 seconds west, along the west line of said Texas Electric Service Company Tract, 4836-6/10 feet to a galvanized spike for its southeast corner in the south line of said Ross Tract in County Road No. 4040.

Thence north 89 degrees-37 minutes-26 seconds west, along the south line of said Ross Tract in County Road No. 4040, a distance of 66/7/10 feet to a galvanized spike in the easterly right of way line of said F-M Highway No. 1220.

Thence along said easterly line of F-M Highway No. 1220 along a curve to the left with a radius of 1196-31/100 feet a distance of 310-2/10 feet to its end; then north 28 degrees-25 minutes west, 938 feet to a 1" iron in a west line of said Thomas Survey and Ross Tract being in the east line of said Simmons Survey and for the east line of the Tract defined in the deed to Carter Foundation recorded in volume 3161, page 243 of said Deed Records.

3

Thence north no degrees-12 minutes-16 seconds west, along a west line of said Thomas Survey and Ross Tract and the east line of said Simmons Survey and the east line of said Carter Foundation Tract 685-3/10 feet to a concrete monument which replaces the 1" pipe in a rock mound for a reentrant corner of Ross Tract and for the northeast corner of said Carter Foundation Tract.

Thence north 89 degrees-36 minutes-03 seconds west, along the south line of said Ross Tract to and along the south line of said McCarty Survey, and along the north line of said Carter Foundation Tract, 759-9/10 feet to a 1" iron in the northerly line of said F-M Highway No. 1220.

Thence along the northerly line of said F-M Highway No. 1220 along a curve to the left with a radius of 1195-93/100 feet a distance of 239-6/10 feet to a 1" iron at its end, then north 84 degrees-13 minutes-37 seconds west, 2527-7/10 feet to the place of beginning and containing 300-07/100 acres exclusive of the 0-04/100 of an acre within said County Road No. 4040, of the said 300-07/100 acres, 3-78/100 acres are within the Ocean Fuel Company Easement recorded in volume 3408, page 432 of said Deed Records and 2-77/100 acres are within the Lone Star Gas Company easement recorded in volume 5057, page 97 of said Deed Records, leaving 293-52/100 acres exclusive of road and said easements, of the said 300-07/100 acres 2030-06/100 acres are within said McCarty Survey, 31-05/100 acres are within said Simmons Survey and 65-96/100 acres are within said Thomas Survey.

4

Exhibit "A"

Being a tract or parcel of Land out of the Samuel Lockhart Survey, Abstract #977, situated in Tarrant County, Texas and more particularly the East 1/2 of said Survey, SAVE AND EXCEPT the tracts taken by the State of Texas by Condemnation, in Condemnation Proceedings #64763, filed 5-10-67, styled State of Texas vs. Evelyn J. Tannahill, and said remaining Land is described in 2 Tracts by metes and bounds as follows:

TRACT ONE:

BEGINNING at the Southeast corner of said Lockhart Survey, at an ell corner of the J. Walker Survey;

THENCE North 89° - 33' West, along the common line between said Lockhart and Walker Surveys, 586.2 feet to a concrete highway marker for corner in the Northeasterly R. O. W. line of U. S. Highway #81 and #287;

THENCE Northwesterly, along the Northeasterly R. O. W. line of said Highway North 37° - 39' West 1838.9 feet to a concrete R. O. W. marker and the beginning of a curve to the Left, having a radius of 11,634.16 feet, then along said curve to the Left 512.37 feet to a concrete R. C. W. marker, then North 36° - 53' West 345.2 feet an iron pin, then North 41° - 51' West 350.3 feet to a concrete R. O. W. marker, thence North 20° - 54' West 140.2 feet to a concrete R. O. W. marker in the East R. O. W. line of Farm to Market Highway #156;

THENCE North 00° - 06' East, 136.7 feet to an iron pin for corner in the North line of said Lockhart Survey and in the South line of the W. Redfield Survey;

THENCE South 89° - 51' East, along a fence and the common line between said Surveys, 2530.65 feet to an iron pin at the Northeast corner of said Lockhart Survey, same being the Southeast corner of said Redfield Survey, on said corner is in the West line of the J. Walker Survey;

THENCE South 00° - 12' West, along the common line between said Lockhart and Walker Surveys, 2658.4 feet to the point of beginning and containing 98.70 Acres of Land, of which 1.056 Acres is within the Channel Easements, leaving 97.644 Acres.

TRACT TWO:

BEGINNING at a concrete R. O. W. marker in the Southwesterly line of U. S. Highway #81 and #287, said marker is in the South line of said Lockhart Survey, North 89° - 33' West 1031.0 feet from its Southeast corner, said marker is also in the North line of the J. Walker Survey;

THENCE North 89° - 32' West, along the common line between said Lockhart and Walker Surveys, 1546.0 feet to an iron pin for corner in the East line of Farm to Market Highway #156;

THENCE Northerly, along the East line of said Highway #156, North 00° - 01' West 1069.5 feet to a concrete R. O. W. marker, then along a curve to the Right, having a radius of 2828.79 feet, a distance of 42.45 feet to another concrete R. O. W. marker, then North 5° - 23' East 295.04 feet to a concrete R. O. W. marker, then along a curve to the Left, having a radius of 2900.79 feet, a distance of 266.59 feet to a concrete R. O. W. marker, then North 00° - 11' East 94.5 feet to a concrete R. O. W. marker for corner in the Westerly R. O. W. line of said U. S. Highway #81 and #287;

THENCE    along    the Southwesterly R. O. W. line of said Highway, North 68° - 54' East 53.44 feet to a concrete R. O. W. marker, then along a curve to the Right, having a radius of 11,259.16 feet, a distance of 326.37 feet to a concrete R. O. W. marker, then South 43° - 06' East 343.1 feet to a concrete R. O. W. marker; then

along a curve to the Right, having a radius of 11,284.16 feet, a distance of 79.44 feet to a concrete R. O. W. marker, and then South 37° - 39' East 1564.4 feet to the point of beginning and containing 34.08 Acres of Land, of which 2.103 Acres is within the Channel Easements, leaving 31.977 Acres.

VOL 6342 PAGE 752

EXHIBIT A

## TRACT A

A tract of land out of the Nathaniel Holbrook Survey, Abstract 647, and the John Kelsey Survey, Abstract 913, situated in Tarrant County, Texas, and being a portion of a 938.03 acre tract as described in Volume 4671, page 63, Deed Records, Tarrant County, Texas;
BEGINNING at the Northwest corner of said 938.03 acre tract;
THENCE South 89 deg. 19 min. 90 sec. East, 4751.3 feet along the North line of said tract to an iron pin for corner;
THENCE North 00 deg. 31 min. East, 117.2 feet to an iron pin for corner;
THENCE South 89 deg. 48 min. East, 2605.74 feet to a point for corner;
THENCE South 00 deg. 24 min. West, 5008.81 feet to a point for corner in the South line of 938.03 acre tract;
THENCE North 89 deg. 42 min. West, 6112.44 feet to a point in the center line of road and being the most Southerly Southwest corner of a 938.03 acre tract;
THENCE along said center line as follows:
North 11 deg. 36 min. West, 708.4 feet to an iron pin;
North 07 deg. 34 min. West, 471.8 feet to an iron pin;
North 31 deg. 53 min. West, 211.2 feet to an iron pin;
South 89 deg. 19 min. West, 914.2 feet to an iron pin and the most Westerly, Southwest corner of said 938.03 acre tract;
THENCE along West line of said tract North 00 deg. 19 min. East, 3594.4 feet to the Point of Beginning, containing 800 acres of land.

1. Existing leases and rights of parties in possession under lease between Capsyn Multiple Limited Nos. 21-23, as lessor, and W. R. Watt, Jr., and Watt Cattle Co., as lessee, dated February 23, 1976.

2. Right-of-way easement from J. R. Edwards, et al to Lone Star Gas Co., dated July 25, 1952 and as shown on survey of T. D. Disheroon dated August 8, 1977.

3. Unrecorded ten (10) foot Tri-County Electric Cooperative easement as shown by Survey of T. D. Disheroon, dated August 8, 1977.

4. Any portion of the property lying within public or private roads and all areas outside the fence along County Road 1022 as shown by Survey of T. D. Disheroon, dated August 8, 1977.

## TRACT B

Being a tract or parcel of land out of the Cyrus K. Gleason Survey, Abstract #559, situated in Tarrant County, Texas, and described by metes and bounds as follows:
BEGINNING at an iron pin in the South line of County Road #1022, said iron pin is 679 varas West and South 00° - 11' East 25.0 feet from the Northeast corner of said Gleason Survey, and said iron pin is also the Northwest corner of a certain tract in said Survey as recorded in Volume 5995, page 586, Deed Records, Tarrant County, Texas;
THENCE South 00° - 11' East, along a fence and the West line of said tract recorded in Volume 5995, page 586, a distance of 3387.35 feet to an iron pin for corner in the North line of County Road #1029;
THENCE, along the North line of said County Road, North 89° - 38' - 40" West, 643.55 feet to an iron pin and North 40° - 46' - 20" West, 55.9 feet to an iron pin for corner in the East line of said County Road;
THENCE North 00° - 52' East, along the East line of said County Road #1029, a distance of 604.5 feet to an iron pin for corner in the North line of said County Road, said iron pin is the Southeast corner of a certain 1.24 Acre Tract out of said Gleason Survey as recorded in Volume 5717, page 727, Deed Records, Tarrant County, Texas;
THENCE along the boundary of said 1.24 acre Tract as follows: North 00° - 37' East 659.7 feet to an iron pin, North 86° - 07' West 107.0 feet an iron pin, South 1° - 15' West 200.0 feet an iron pin, South 81° - 16' East 42.6 feet an iron pin and South 00° - 49' West along a fence 459.4 feet to a post for the Southwest corner of said 1.24 Acre Tract in the North line of said County Road;
THENCE North 89° - 06' - 40" West, along a fence and the North line of said Road 2688.35 feet to an iron pin for corner;



VOL. 6342 PAGE 753

THENCE North 1° - 01' - 35" East, along a fence 1507.15 feet to an iron pin for corner;
THENCE South 89° - 24' - 45" East, along a fence 2728.5 feet to an iron pin for corner;
THENCE North 00° - 50' - 40" East, along a fence 1224.5 feet to an iron pin for corner in the South line of County Road #1022;
THENCE South 89° - 09' -35" East, along the South line of said Road 645.6 feet to the point of beginning and containing 145.89 Acres of Land.

The above-described property is expressly subject to:

1. Encroachment of fences and overhead telephone and electric lines as shown on Survey prepared by J. R. Dunaway dated August 8, 1977.

2. Existing leases and rights of parties in possession, under lease between Grantors, as Lessor and F. L. Edmondson, as Lessee, dated July 31, 1975.

JS 44 (Rev. 11/04)

**CIVIL COVER SHEET**

U.S. DISTRICT COURT

ORIGINAL

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** Wasiano Judd, on behalf of himself and a class of Judgment Creditors of the Estate of Teruo Himoto

**(b)** County of Residence of First Listed Plaintiff Honolulu, Hawaii
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
W. Kelly Puls, Brant C. Martin, Puls, Taylor & Woodson, LLP
2600 Airport Freeway, Fort Worth, TX 817-338-1717

**DEFENDANTS** B.U. Development Company, Inc; Ellesmere Investment Corporation, Inc; Jason Development Company, Inc; Langley Investment Corporation; Pender Investment Corporation, Inc; Rev-1516 Investment Corporation, Inc; non Investment Corporation,

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known) **4-05CV-234-Y**
Janet Militello, Locke, Liddell & Sapp LLP
3400 JP Morgan Chase Tower, 600 Travis St., Houston TX 77002

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | **LABOR** | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | Act | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | Security Act | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | | | ☐ 900 Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | **PRISONER PETITIONS** | | Under Equal Access |
| | Employment | ☐ 510 Motions to Vacate | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | Sentence | | ☐ 950 Constitutionality of |
| | Other | **Habeas Corpus:** | | State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 530 General | | |
| | | ☐ 535 Death Penalty | | |
| | | ☐ 540 Mandamus & Other | | |
| | | ☐ 550 Civil Rights | | |
| | | ☐ 555 Prison Condition | | |

Note: PERSONAL INJURY column: ☐ 362 Personal Injury - Med Malpractice; ☐ 365 Personal Injury - Product Liability; ☐ 368 Asbestos Personal Injury Product Liability. PERSONAL PROPERTY column: ☐ 370 Other Fraud; ☐ 371 Truth in Lending; ☐ 380 Other Personal Property Damage; ☐ 385 Property Damage Product Liability.

**V. ORIGIN** (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332
Brief description of cause:
Declaratory judgment, execution and foreclosure of real property to satisfy judgment in favor of Class

**VII. REQUESTED IN COMPLAINT:**
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ in excess of $100,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**VIII. RELATED CASE(S) IF ANY** (See instructions)
JUDGE _____ DOCKET NUMBER _____

DATE _____ SIGNATURE OF ATTORNEY OF RECORD _____

FOR OFFICE USE ONLY
RECEIPT # 52371 AMOUNT 250- APPLYING IFP _____ JUDGE 3924 MAG. JUDGE _____