```
                                                                          1


 1                  IN THE UNITED STATES DISTRICT COURT

 2                     FOR THE DISTRICT OF HAWAII

 3                                    )
     In Re:                           )   CV 03-11111 MLR
 4                                    )
     MDL 840 Marcos, et al.,          )   Honolulu, Hawaii
 5                                    )   June 26, 2006
                                      )   10:00 A.M.
 6                                    )
                                      )   Various Motions
 7                                    )
     _____)
 8
                       TRANSCRIPT OF PROCEEDINGS
 9            BEFORE THE HONORABLE MANUEL L. REAL
                  UNITED STATES DISTRICT JUDGE
10   APPEARANCES:

11   For the Class of                 ROBERT A. SWIFT
     Filipino Judgment                Kohn Swift & Graf, P.C.
12   Creditors:                       One South Broad St., Ste. 2100
                                      Philadelphia, PA 19107-3389
13
                                      SHERRY P. BRODER
14                                    Davies Pacific Ctr.
                                      841 Bishop St., Ste. 800
15                                    Honolulu, HI 96813

16                                    JON M. VAN DYKE
                                      2515 Dole St.
17                                    Honolulu, HI 96822

18   For Intervenors:                 THOMAS BENEDICT
                                      Goodsill Anderson Quinn
19                                      & Stifel
                                      Alii Pl.
20                                    1099 Alakea St., Ste. 1800
                                      Honolulu, HI 96813
21
     Official Court Reporter:         Debra Kekuna Chun, RPR, CRR
22                                    United States District Court
                                      300 Ala Moana Blvd. Ste. C285
23                                    Honolulu, HI 96850
                                      (808) 534-0667
24
     Proceedings recorded by machine shorthand, transcript
25   produced with computer-aided transcription (CAT).
```

EXHIBIT A

```
 1   MONDAY, JUNE 26, 2006                    10:25 O'CLOCK A.M.
 2              THE CLERK:  Civil 03-11111 MLR, In re MDL 840
 3   Marcos, et al.  This case has been called for Hearing on
 4   the First Motion for Attorneys' Fees and Reimbursement of
 5   Expenses by Plaintiff's Counsel; also for Hearing on Celsa
 6   Hilao's Motion for Extension of Judgment by Class; also for
 7   Ex Parte Application for Extension of the June 26 Hearing
 8   Date on Class Motion for Extension of Judgment and for
 9   Expedited Consideration of the Unopposed Motion to
10   Intervene.
11              Counsel, please make your appearances for the
12   record.
13              MS. BRODER:  Good morning, Your Honor.  Sherry
14   Broder for the class plaintiffs.
15              MR. SWIFT:  Robert Swift for the class, Your
16   Honor.
17              MR. VAN DYKE:  Jon Van Dyke.  Good morning, Your
18   Honor.
19              MR. BENEDICT:  Good morning, Your Honor.  Thomas
20   Benedict on half of the proposed intervenors.
21              THE COURT:  All right.  Take up first the motion
22   on the attorneys' fees.  And I just wanted to go over some
23   matters with counsel.  I want everybody to recognize --
24   first of all, are there any persons here who are opposing
25   the motion?
```

1        No one has responded to that.  And I have a
2   letter signed by 63 of the class members.  I don't know
3   whether you've received this, Mr. Swift.  Have you?
4        MR. SWIFT:  I'm not sure which one you've
5   referred to.  I can tell Your Honor some of the documents
6   that I've received from class members.
7        THE COURT:  You want to look at that and see if
8   that's the one that --
9        MR. SWIFT:  Yes.  I've received this, Your
10  Honor.
11       THE COURT:  Okay.  So we have that opposing the
12  matter.
13       And I propose now to maybe in that respect allow
14  a 10 percent interim award at this moment.  It's not that I
15  am denying any 30 percent award.  I'm leaving that for
16  another day.  So that I can get some feeling not only of
17  this matter but also that counsel has advised me that there
18  may be some more monies coming from -- in this matter with
19  reference to the matters in Singapore.  Where does that
20  stand, Mr. Swift?
21       MR. SWIFT:  Well, I'm happy to report to you
22  that, as of now, there appears there's not going to be a
23  resolution of the Singapore matter.  Both the Philippine
24  government backed off of its willingness to try to settle
25  that --

4

1            THE COURT: Something new?
2            MR. SWIFT: Well, it happened on Friday, and the
3   PCGG decided to change its mind, Your Honor. And, in
4   addition, I received a communication from Mr. Bartko that
5   the Marcoses now wanted some consideration that was far in
6   excess of anything that I would consider appropriate.
7            THE COURT: All right. So that's not resolved.
8            MR. SWIFT: It's not, and I think there's going
9   to be some continued litigation there.
10           There is a couple other matters. First of all,
11  the matters of costs and set-asides.
12           THE COURT: Yes. That again I am going to grant,
13  but I have just a couple of matters that I just want --
14  this is not -- you can just write me a little memo and
15  clarify it for me. That's all. Let me see. I've got it
16  someplace here.
17           Yes. The matter of professional services,
18  payment for counsel and litigation costs in Singapore now
19  that that matter is going to be ongoing, and meetings with
20  government officials. Just to clarify those matters for
21  me.
22           So that I'm going to grant today costs in the
23  amount of $753,533.69 and, as requested in the motion, set
24  aside $600,000 of costs of the special master. I have no
25  motion from the special master or any -- have you received

```
 1    any?
 2              MR. SWIFT:  Yes.  Mr. Schreiber had sent me his
 3    statement of professional services, and I thought it was
 4    appropriate to include that in the motion.  As you know, he
 5    was in China for a period of time just the last three
 6    weeks.
 7              THE COURT:  Right.
 8              MR. SWIFT:  So -- and, actually, his invoice, I
 9    think, is for slightly under $600,000.  But given the fact
10    that it's been pending so long, I thought it was only
11    appropriate to pay that now.
12              THE COURT:  Yes, those should be paid.  And
13    whatever that figure is in any order that you give me that
14    those will be paid out.  And your costs, of course, except
15    for those -- but you get those to me in a memo and clarify
16    those matters, and I think that will take care of that.
17              MR. SWIFT:  Right.  And if I could just mention
18    that the matter -- now, the Singapore counsel fees I can
19    certainly explain to you now they're based on --
20              THE COURT:  Well, I know the basis of them.  But
21    I want -- in other words, as to why I should include them
22    now at this time since that litigation is still ongoing.
23              MR. SWIFT:  Right.  Well, they've already been
24    paid is the answer.  And Singapore counsel are not
25    permitted to take matters on contingency, and so they
```

```
 1   submit to me bills approximately once a year and the amount
 2   that we mentioned is the ongoing.
 3           I also ask for a set-aside of approximately a
 4   hundred thousand for future ones so that there would be
 5   enough money left.
 6           And also --
 7           THE COURT:  Set-aside.  And I'm not going to make
 8   a full distribution to the class claims.  I want to make a
 9   distribution -- I think you estimate $3200.  I think to
10   make a now $2,000 distribution to each class member.
11           MR. SWIFT:  Now, there's an order that Your Honor
12   may not be aware of that came down from the Ninth Circuit
13   on June 22d.  Your Honor, the Republic of the Philippines
14   and the PCGG asked the Ninth Circuit to stay any
15   distribution in this of Arelma monies until any mandate
16   issues from the circuit.  The circuit took that up on
17   emergency basis, and on Thursday of last week entered an
18   order which prohibits you from making distribution of the
19   Arelma monies, not the other monies, and it prohibits me
20   from asking you to distribute those.  So I'm not asking for
21   distribution at this time, but --
22           THE COURT:  Well, I was not aware of that, and so
23   I can't make any distribution at this point, I assume.
24           MR. SWIFT:  Well, no.  Actually, you can.  We've
25   recovered money, you'll recall, based on a house, a car --
```

```
 1                THE COURT:  Yes, I have in mind --
 2                MR. SWIFT:  -- the Picasso painting, and that's a
 3   little over 1.6 million.
 4                THE COURT:  -- from those funds that the costs
 5   can be distributed.
 6                MR. SWIFT:  Right.  And after those costs that
 7   would still leave roughly, if my arithmetic is right, about
 8   $400,000 left from the non-Arelma monies that would be
 9   there.
10                THE COURT:  And that would be applied to the
11   costs of the special master so that we don't have any
12   problem.
13                MR. SWIFT:  The special master as well as the
14   cost of class counsel, and, of course, we would clarify.
15                There was one other matter Your Honor wanted
16   clarification on in addition to Singapore.
17                THE COURT:  Yes.
18                MR. SWIFT:  Could you remind me.  There was
19   something in --
20                THE COURT:  No, the matters were --
21                MR. SWIFT:  Oh, okay.
22                THE COURT:  There were three.  Professional
23   services.  It just says professional services, payment for
24   counsel and litigation costs in Singapore, and meeting with
25   government officials.
```

```
 1              MR. SWIFT:  Right.
 2              THE COURT:  Meetings with government officials.
 3    Just to clarify those.
 4              MR. SWIFT:  Right.  I'm virtually certain the
 5    meetings with government officials refers to when, for
 6    example, we would have a meeting with the PCGG in a
 7    restaurant in Manila and -- or Rod Domingo would do it
 8    principally and pay for dinner.
 9              THE COURT:  Well, just give me a little memo.
10              MR. SWIFT:  Sure.  Okay.  That's fine.
11              THE COURT:  I think I can just approve those
12    matters, as I said, and distribution will be made whenever
13    the matter of the Arelma funds will be available.
14              MR. SWIFT:  What I was going to suggest, Your
15    Honor, when I clarify these other matters --
16              THE COURT:  And let me put it on the record I
17    have not heard from the Ninth Circuit since last Thursday;
18    so I don't know what the situation is there.
19              MR. SWIFT:  Well, there's an order on their
20    docket; so -- but what I thought, too, was that Your Honor
21    could make a conditional award based on the Ninth Circuit
22    order.  So, in other words, as soon as the mandate does
23    issue, then --
24              THE COURT:  Well, that -- I assume I can do that.
25              MR. SWIFT:  Yes.
```

```
 1              THE COURT:  That I cannot make a distribution,
 2   but I can make an order that distribution will become
 3   effective when the mandate is resolved.
 4              MR. SWIFT:  Right.  So I think that -- there are
 5   some distribution matters as to how distribution can be
 6   made in the Philippines.  I thought that would be better
 7   for a conference in chambers with Your Honor, if that's
 8   appropriate.
 9              THE COURT:  We'll take that up, and, yeah, then
10   we'll make that official in some hearing that we have.
11              MR. SWIFT:  Right.  And also just to put on the
12   record:  of course, we sent out class notice of this
13   hearing.
14              THE COURT:  Yes.  That's why I got some letters.
15              MR. SWIFT:  It went out to over 70 --
16              THE COURT:  Some in Tagalog that I cannot read
17   and have not been translated and some in English that I
18   can.
19              MR. SWIFT:  Well, I have the advantage that my
20   co-counsel in the Philippines sends me some translations of
21   certain parts.  What I can tell Your Honor is this:  We've
22   received over 150 responses.  Now, I know the court has
23   received far fewer.  Probably about 25 to 30.
24              THE COURT:  25 at most.
25              MR. SWIFT:  And there was only the one objection
```

1  that Your Honor showed me a moment ago, and that objection
2  was based on the fact that they didn't bother to look to
3  see how we had documented the expenses as well as the fees.
4           THE COURT:  Sure.
5           MR. SWIFT:  What I can tell you is that of the
6  150 roughly responses we've received, many of them
7  requiring translation, that they have overwhelmingly
8  supported the payment of counsel fees and have been
9  laudatory of our efforts in obtaining the verdict as well
10 as collecting on the proceeds.  So the only objection was
11 the one that Your Honor singled out.
12          In addition, there was a response from one of the
13 larger human rights groups with 3,000 members that said it
14 had no objection to our request.
15          So, Your Honor, may I submit a proposed form of
16 order to you.
17          THE COURT:  Yes, let's have that.
18          MR. SWIFT:  All right.  And, if you have no
19 further questions, then I'll be seated.
20          THE COURT:  That's right.  On this matter, yeah.
21          Then we have the motion for the extension of the
22 judgment.
23          MS. BRODER:  Yes, Your Honor.  We filed this
24 motion --
25          THE COURT:  I thought I already signed an order

1   on that.

2           MS. BRODER:  Did you already sign an order?

3           THE COURT:  I thought so.  And my secretary

4   thought so, but we'll check that out.  But in any event I

5   have no problem with that.

6           MS. BRODER:  Okay.  Well, I appreciate that, Your

7   Honor.  I think it's, you know, absolutely crystal clear

8   that under any circumstances the judgment is still good,

9   and I think in this particular case, you know, every single

10  asset that we've tried to find has been fraudulently

11  concealed, and so, you know, I just think equity demands

12  that this be allowed.  Thank you.

13          THE COURT:  Right.  All right.  Then we have the

14  motion for intervention.

15          MR. BENEDICT:  Yes, Your Honor.  What we sought

16  through our motion was to intervene in what the court has

17  apparently just ruled upon, which was the motion to extend

18  the judgment.  We had hoped that we would be able to brief

19  the court and to have an opportunity to participate in the

20  oral argument on this motion.

21          THE COURT:  Well, this is for matters in Texas,

22  is it not?

23          MR. BENEDICT:  It is, Your Honor.  The --

24          THE COURT:  Shouldn't this be addressed to the

25  court in Texas?

```
 1            MR. BENEDICT:  Well --
 2            THE COURT:  Because this has not come to me as a
 3   matter of the human rights litigation matter.  Although,
 4   it's filed as such, the -- it's not been transferred to
 5   this court; so I have nothing on the Texas case here.
 6            MR. BENEDICT:  Well, Your Honor, what we sought
 7   to do was to intervene in this action because it will
 8   substantively affect the rights of the proposed intervenors
 9   in the Texas action.
10            THE COURT:  Well, this action in Hawai'i doesn't
11   affect them at all.
12            MR. BENEDICT:  Well --
13            THE COURT:  I can make no judgment that will
14   affect your clients in Hawai'i at this point of the
15   litigation.  If it ever comes to me as part of the
16   multidistrict litigation litigation, then I can make some
17   rulings.  But I can't make any rulings on what's there in
18   Texas before another judge in terms what's going on in that
19   case.
20            MR. BENEDICT:  We're not asking you to --
21            THE COURT:  It might be entitled the Estate of
22   Ferdinand Marcos, but it's not here in this district.
23            MR. BENEDICT:  Well, Your Honor, we're not asking
24   you to make rulings upon what's happening in Texas.  We're
25   simply asking to be allowed to participate in the motion to
```

1    extend the judgment here.

2            THE COURT: No, but the judgment here will not

3    affect your clients by any action of this court.

4            MR. BENEDICT: Your Honor, it's our belief that

5    the --

6            THE COURT: Or the litigation that's before this

7    court. What will affect your clients is the litigation

8    that's in Texas, and that's where intervention comes: in

9    that case. You have no basis to intervene here.

10           MR. BENEDICT: So are you denying our motion,

11   Your Honor?

12           THE COURT: I'm going to deny the motion on the

13   basis that I have no jurisdiction over the matters in Texas

14   at this point of any litigation in Texas; that this has not

15   been sent to this district for litigation under the

16   multidistrict case or the trial of the case in this

17   district. Nothing that's -- that happens in this district

18   can affect the judgment in Texas; so there's no need for

19   intervention of your clients here.

20           MR. BENEDICT: Thank you, Your Honor.

21           THE COURT: In other words, if a judgment is then

22   transferred here for execution, then your clients may be

23   necessary for intervention, but not at this point of any

24   litigation that's before me.

25           MR. BENEDICT: Okay. Thank you.

14

```
 1            THE COURT:  All right.  That motion is denied.
 2            All right.  We'll be in recess, and I'll see
 3  counsel.
 4       (Court recessed at 10:43 A.M.)
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

15

```
 1                    COURT REPORTER'S CERTIFICATE
 2           I, Debra Kekuna Chun, Official Court Reporter,
 3    United States District Court, District of Hawaii, do hereby
 4    certify that the foregoing is a correct transcript from the
 5    record of proceedings in the above-entitled matter.
 6           DATED at Honolulu, Hawaii, June 29, 2006.
 7
 8                                   /s/ Debra Chun
 9                                   DEBRA KEKUNA CHUN
10                                   RPR, CRR
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```