**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: ESTATE OF FERDINAND E.
MARCOS HUMAN RIGHTS LITIGATION,

CELSA HILAO,
                    *Plaintiff-Appellee,*

                v.

ESTATE OF FERDINAND MARCOS,
                    *Defendant-Appellee,*

REVELSTOKE INVESTMENT
CORPORATION, INC.
          *Applicant for Intervention
          and Appellant.*

No. 06-16301

D.C. No.
MDL-00840-MLR

OPINION

Appeal from the United States District Court
for the District of Hawaii
Manuel L. Real, District Judge, Presiding

Argued and Submitted
June 17, 2008—Honolulu, Hawaii

Filed July 31, 2008

Before: Alfred T. Goodwin, Pamela Ann Rymer, and
Sandra S. Ikuta, Circuit Judges.

Opinion by Judge Rymer

9753

## COUNSEL

Eugene D. Gulland (argued) and Richard A. Jones, Covington & Burling LLP, Washington, D.C., for the proposed-intervenors-appellants.

Jon Van Dyke, Honolulu, Hawaii, (argued); Robert A. Swift, Kohn, Swift & Graf, P.C., Philadelphia, Pennsylvania, for the appellee.

## OPINION

RYMER, Circuit Judge:

This appeal requires us to consider a novel situation involving the registration of a federal judgment. In short, the judgment was rendered in the United States District Court for the District of Hawaii and registered in the United States District Court for the Northern District of Texas, where the prevailing plaintiff sought to enforce it against a non-party, Texas defendant. The defendant in the Texas enforcement action moved to dismiss on the ground that the judgment was not timely registered because, under Texas's borrowing statute, the Hawai'i "statute of limitations" for enforcing judgments applies and under it, the judgment had expired. This prompted the plaintiff to ask the rendering court to declare that the judgment was live and, in any event, to extend it, which the district court did. Meanwhile, the collection defendant moved to intervene in the extension proceeding, which the district court did not allow, and then to appeal the extension, which the court also did not allow. We conclude that the party against whom enforcement was sought had a significant protectable interest at stake that gave it the right to be heard in the extension proceeding, and to appeal. Having considered the intervenor's arguments on the merits, we also conclude that the district court erred in purporting to extend the judgment. Accordingly, we reverse the orders denying intervention, and vacate the order granting extension.

I

In March, 1986, a class of human rights victims whose lead plaintiff was Celsa Hilao brought suit in the District of Hawaii against Ferdinand E. Marcos and his estate. This action became part of a multidistrict proceeding, *Estate of Ferdinand E. Marcos Human Rights Litigation,* MDL 840, over which the transferee judge, Honorable Manuel L. Real, presided. A judgment was entered in Hilao's favor on February 3, 1995

(the MDL 840 Judgment). In it, the court retained jurisdiction.
The MDL 840 Judgment was appealed and affirmed, *Hilao v.
Estate of Marcos*, 103 F.3d 767 (9th Cir. 1996); our mandate
issued January 8, 1997. Before commencing the proceedings
at issue here, Hilao registered the MDL 840 Judgment in the
Northern District of Illinois in January 1997, the Republic of
the Philippines in May 1997, and Singapore in February 2005.
Hilao then registered the MDL 840 Judgment in the Northern
District of Texas pursuant to 28 U.S.C. § 1963,[1] and filed a
class action complaint April 8, 2005 against Revelstoke
Investment Corporation, Inc., and six other corporations (col-
lectively, "Revelstoke"), alleging that real properties to which
Revelstoke holds title in Texas are beneficially owned by the
Marcos Estate, and seeking to execute and foreclose on those
properties in partial satisfaction of the MDL 840 Judgment.

On May 9, 2006, Revelstoke notified Hilao of its belief that
the MDL 840 Judgment had expired pursuant to Hawai'i
Revised Statute § 657-5[2] as applied through the Texas statute

---

[1]Section 1963 provides in pertinent part:

A judgment in an action for the recovery of money or property
entered in any . . . district court . . . may be registered by filing
a certified copy of the judgment in any other district . . . when
the judgment has become final by appeal or expiration of the time
for appeal or when ordered by the court that entered the judgment
for good cause shown. . . . A judgment so registered shall have
the same effect as a judgment of the district court of the district
where registered and may be enforced in like manner.

[2]HRS § 657-5 provides:

Unless an extension is granted, every judgment and decree of any
court of the State shall be presumed to be paid and discharged at
the expiration of ten years after the judgment or decree was ren-
dered. No action shall be commenced after the expiration of ten
years from the date a judgment or decree was rendered or
extended. No extension of a judgment or decree shall be granted
unless the extension is sought within ten years of the date the
original judgment or decree was rendered. A court shall not
extend any judgment or decree beyond twenty years from the
date of the original judgment or decree. No extension shall be
granted without notice and the filing of a non-hearing motion or
a hearing motion to extend the life of the judgment or decree.

of limitations, Texas Civil Practice & Remedies Code
§ 16.066(a), which is a borrowing statute.[3] HRS § 657-5 pro-
vides that a judgment is presumed paid and discharged ten
years after it is rendered, unless the judgment is extended
within that ten-year period.

On June 5, Hilao filed a motion pursuant to Federal Rules
of Civil Procedure 69 in the MDL 840 action for a ten-year
extension of the judgment. Hilao's memorandum in support
explains that the issue had been raised in the Texas collection
litigation and that, while Hilao believed HRS § 657-5 was not
applicable to her federal judgment, she sought an extension
out of an abundance of caution.

Revelstoke filed a motion for judgment on the pleadings in
the Texas litigation on June 15, contending that the enforce-
ment action was barred by the Hawai'i ten-year statute of lim-
itations borrowed in the forum state by Tex. Civ. Prac. &
Rem. Code § 16.066(a). On June 19, Hilao asked the Northern
District of Texas to stay proceedings on Revelstoke's motion
until after the District of Hawaii ruled on Hilao's request to
extend the judgment. A stay was subsequently entered.

On June 22, Revelstoke moved to intervene in MDL 840
for the limited purpose of contesting Hilao's motion to
extend. Hilao did not oppose intervention.

At a hearing held on June 26, Judge Real first granted
Hilao's motion to extend the judgment. After ruling on that
motion, the court considered, and denied, Revelstoke's
request to intervene for the purpose of opposing the motion.
Its reasons, stated from the bench, were that the court had no
jurisdiction over the matters in Texas; that the Texas litigation
had not been sent to the District of Hawaii under the multidis-

---

[3]Tex. Civ. Prac. & Rem. Code § 16.066(a) provides: "[a]n action on a
foreign judgment is barred in this state if the action is barred under the
laws of the jurisdiction where rendered."

trict case; and that nothing that happens in the District of Hawaii can affect the judgment in Texas.

The same day the court signed a written order, in the form proposed by Hilao, granting the extension. The order was entered June 27, and finds that the MDL 840 Judgment was not final until issuance of the Ninth Circuit mandate on January 8, 1997; HRS § 657-5 only applies to "domestic" judgments and federal court judgments have no expiration date; application of HRS § 657-5 to federal court judgments on federal causes of action would be barred by the Supremacy Clause; and alternatively, even if HRS § 657-5 were applicable, good cause exists to grant an extension to January 8, 2007 given Marcos's pattern and practice of secreting assets.

Revelstoke then moved to intervene for the limited purpose of appealing the district court's extension order. The court denied this motion in a written order that states: "This matter rests in the jurisdiction of the Texas litigation."

Revelstoke filed a timely notice of appeal from the district court's orders denying intervention and granting the extension.

## II

**[1]** Intervention is governed by Fed. R. Civ. Proc. 24(a) and (b). To intervene as of right pursuant to Rule 24(a), an applicant must show that "(1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect its interest; (3) the application is timely; and (4) the existing parties may not adequately represent the applicant's interest." *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 802 (9th Cir. 2002) (quoting *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (quoting *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998) (internal quotation marks omitted))).

**[2]** Only the first requirement is seriously disputed. For this requirement, we set out an "analytical framework" in *City of Los Angeles*, 288 F.3d at 398. As summarized in *Southern California Edison*:

> An applicant has a "significant protectable interest" in an action if (1) it asserts an interest that is protected under some law, and (2) there is a "relationship" between its legally protected interest and the plaintiff's claims. The relationship requirement is met if the resolution of the plaintiff's claims actually will affect the applicant. The "interest" test is not a clear-cut or bright-line rule, because no specific legal or equitable interest need be established. Instead, the "interest" test directs courts to make a practical, threshold inquiry, and is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process.

307 F.3d at 803 (internal quotation marks and citations omitted.)

Revelstoke argues that it has an interest — avoiding the loss of its real property in the Texas action — that is protected under HRS § 657-5, which shields persons such as Revelstoke from efforts to enforce judgments that have expired. Further, in Revelstoke's view, the relational element is met because its motion in the Northern District of Texas seeks to vindicate this interest, while Hilao's motion for an extension in the District of Hawaii seeks to thwart it. Hilao counters that Revelstoke's interest is solely concerned with property in Texas that is the subject of a separate lawsuit unrelated to the subject matter of MDL 840 — the torture, summary execution and disappearance of thousands of Filipinos at the hands of Ferdinand Marcos.

We review *de novo* the district court's denial of intervention as of right, *Southern California Edison*, 307 F.3d at 802,

and are guided by the maxim that the requirements for inter-
vention are broadly interpreted in favor of intervention. *See,
e.g.*, *City of Los Angeles,* 288 F.3d at 397.

   **[3]** We conclude that Revelstoke had the right to intervene
on the record adduced. Hilao interposed no objection to inter-
vention, which implicitly conceded the significance of a pro-
tectable interest related to her motion to extend.[4] The district
court ruled without reference to Rule 24(a) or the factors that
frame the "significant interest" analysis. Of the reasons given
— no jurisdiction over the matters in Texas, the Texas litiga-
tion had not been sent to the District of Hawaii, and nothing
that happens in the District of Hawaii can affect the MDL 840
Judgment in Texas — the first two have no relevance to inter-
vention and the third cannot be right. Whether the MDL 840
Judgment is alive or dead is directly at issue in the Texas liti-
gation. As Hilao acknowledges, it was this question that pre-
cipitated her request in MDL 840 for an extension, and, in
turn, a request in the enforcement action for a stay. Her papers
in the Northern District of Texas point out that a decision on
this issue by the District of Hawaii will effectively pretermit
the outcome of Revelstoke's motion to dismiss. In these cir-
cumstances, we are satisfied that Revelstoke has a significant
interest that is protected by Hawai'i law, and that is actually
affected as a practical matter by the resolution of Hilao's
request for relief.

---

   [4]So, too, does her request for a stay in the collection action. Hilao's
memorandum in support of a stay in the Northern District of Texas states:
"Instead of placing this Court in conflict with its brother court in Hawaii,
Defendants should, if they believe their own arguments, move to intervene
in the action in Hawaii. Since it is a Hawaiian state statute at issue, pre-
sumably the Hawaiian Federal Court has more experience in interpreting
and applying it than a Texas court. In any event, there is no harm to the
parties by staying the instant Motion until after the Federal Court in
Hawaii addresses the issue on June 26. Depending on the decision by the
Federal Court in Hawaii, Defendants may wish to pursue, modify or with-
draw their Motion."

We are not persuaded otherwise by Hilao's position on appeal. She puts a good deal of weight on *United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004), where a judgment creditor tried to intervene in an environmental enforcement action in which he had no interest except for the prospect that an award of penalties in the remedial phase might impair his ability to collect the debt. We thought this too remote from the core issues involved in the litigation, and in any event, believed the creditor's interest would not be impaired because a separate process for approving claims was in place. However, the *Alisal* scenario is quite different from the situation here. No doubt Revelstoke's interest (like the *Alisal* creditor's interest) would have been too distant for intervention *before* Hilao invoked the District of Hawaii's jurisdiction over the MDL 840 Judgment in response to Revelstoke's position in the Northern District of Texas; but once Hilao sought relief with respect to the life of the judgment in MDL 840, and a stay with respect to the same issue in the Northern District of Texas where it initially surfaced, Revelstoke's conjectural interest became concrete.

[4] By the same token, we see no compelling reason why Revelstoke cannot have a sufficient interest in the life of the judgment to intervene in a discrete proceeding as to that particular issue, even though it lacks an interest in the litigation as a whole. *Alisal* recognized this precise possibility. 370 F.3d at 921-22 (observing that prior cases suggest that a party's interest in a specific phase of a proceeding may support intervention at that particular stage of the lawsuit); *see also City of Los Angeles*, 288 F.3d at 398-99 (noting that an intervenor's protectable interest might shift if the scope of the litigation is restructured). Revelstoke's interest in participating in an MDL 840 proceeding did not arise until Hilao's motion to extend effectively transferred the forum for determining the life of the MDL 840 Judgment from the Northern District of Texas to the District of Hawaii. Absent that preemptive strike, the issue was before the Northern District of Texas for decision. The registering court could have resolved the issue itself

— in which event Revelstoke would have had a place at the table — or elected to defer to the District of Hawaii by staying its hand until the parties had it out before the court that had rendered the judgment — in which case Revelstoke would also have had a say. It follows that if Revelstoke's interest in having a judgment lien removed from its property enables it to contest enforceability of the judgment in the collection action itself, Revelstoke is entitled to do so wherever that issue turns out to be joined. As it turned out here, this was in MDL 840.

Finally, Hilao suggests that Revelstoke's interest is not entirely impaired or impeded because the district court's extension order has no direct effect on the eventual ruling of the Northern District of Texas. While this is so with respect to the *merits* of the enforcement action, her own papers suggest the opposite with respect to the threshold issue of whether the MDL 840 Judgment was alive at the time of registration. Of course we cannot say for sure what the Northern District of Texas will do once its stay is lifted, but Hilao's representation to that court manifests her belief that the registering court will defer to the rendering court on the issue of extending its own judgment. Hilao relies on cases where courts have rejected intervention founded on concerns about the *stare decisis* or collateral estoppel effect of a decision, such as *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 531-532 (7th Cir. 1988), and *Purcell v. BankAtlantic Financial Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996). But there is an important difference between a non-party's interest in avoiding bad precedent or obtaining a favorable opinion (the situation in *Bethune*) — or in influencing the outcome of another proceeding in which one has only a collateral interest (the situation in *Purcell*) — and the interest that a real party in interest has in adjudicating an issue it has raised in one proceeding that lands in another proceeding for disposition. In the former case, the non-party's interest is abstract and indirect; in the latter case, the party's interest is particularized and direct.

**[5]** Consequently, we conclude that Revelstoke asserts an interest in not having its property executed upon pursuant to a judgment that has expired; this interest is significant, and protected by law (HRS § 657-5 as applied through the Texas statute of limitations, Tex. Civ. Prac. & Rem. Code § 16.066(a)); and there is a direct relationship between its legally protected interest and Hilao's claim in the ancillary proceeding that the MDL 840 Judgment has *not* expired. This means that Revelstoke had a right to intervene and be heard on the merits.[5] We could remand, but see no point in doing so. Revelstoke seeks to protect its own interests, the merits are fully briefed, and no other party in MDL 840 has any interest in the controversy between Hilao and Revelstoke. Therefore, we turn to the order extending the MDL 840 judgment.

### III

**[6]** Revelstoke argues that HRS § 657-5 means what it says: a judgment expires within ten years unless extended before expiration; that the Hawaii Supreme Court said so in *International Savings & Loan Ass'n v. Wiig*, 921 P.2d 117 (Haw. 1996); and that the district court clearly erred in resurrecting the MDL 840 Judgment in 2006 after it expired in February 2005. We agree. On its face, HRS § 657-5 plainly states that all judgments are extinguished after ten years unless timely renewed. The Hawai'i Supreme Court has authoritatively declared that the burden is on the judgment creditor to seek judicial extension of the judgment prior to expiration of the ten-year period, and that if she fails to secure an extension within the ten years, "the judgment and all the rights and remedies appurtenant to that judgment terminate." *Wiig*, 921 P.2d at 119.

Hilao does not argue to the contrary. Instead, she defends the order on other grounds, namely, the MDL 840 Judgment

---

[5]Given this conclusion, we need not consider whether the district court also erred in denying permissive intervention under Rule 24(b).

did not expire until January 8, 2007 when the Ninth Circuit's mandate issued; the MDL 840 Judgment was renewed, and thus extended, every time it was registered in another court; partial collection tolled or renewed the judgment; the MDL 840 Judgment is not governed by an Hawai'i statute; state statutes that would impede the ability of federal courts to ensure collectability of federal judgments based on federal causes of action cannot be enforced because of the Supremacy Clause; the judgment would not have lapsed in any event as it was not "rendered" until January 8, 1997; and good cause existed for extending the MDL 840 Judgment. In effect, Hilao's position is that a federal judgment is free of state limitations and can be enforced forever. For this she cites no authority, and nothing she argues persuades us to accept her view.

   **[7]** Section 1963, the federal statute under which Hilao registered the MDL 840 Judgment in the Northern District of Texas for supplemental enforcement proceedings, has no limitations period. However, it does provide that a registered judgment "shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." Rule 69(a) is to the same effect, providing that the procedure on execution is to be in accordance with the procedure of the state in which the district court is located at the time the remedy is sought. Likewise, the Rules of Decision Act, 28 U.S.C. § 1652, requires application of state statutes of limitations unless a timeliness rule drawn from elsewhere in federal law should be applied. *See Agency Holding Corp. v. Malley-Duff & Assocs.*, 483 U.S. 143, 147 (1987) (so holding). This is the understanding upon which we, and other courts, have proceeded in similar circumstances, looking to the law of the registration forum for its statute of limitations on enforcement of judgments. *See, e.g., Duchek v. Jacobi*, 646 F.2d 415, 417 (9th Cir. 1981) (acknowledging rule that state law applies to procedures for enforcing a judgment); *Marx v. Go Publ'g Co.*, 721 F.2d 1272, 1273 (9th Cir. 1983) (applying limitations law of the registering state); *Mat-*

*anuska Valley Lines, Inc. v. Molitor*, 365 F.2d 358, 359-60 (9th Cir. 1966) (same).[6]

*Marx* and *Matanuska* are particularly instructive. In *Marx*, the plaintiff obtained a judgment against Go Publishing in the United States District Court for the District of Columbia which he registered, and sought to enforce, in the Central District of California. Go Publishing raised a statute of limitations defense based on the California period for enforcing judgments (ten years). We held, based on analogous California law, that the ten-year period runs from the time the judgment is registered, so long as the judgment is not time-barred at the time of registration. In so holding, we rejected an argument that state limitations rules are inapplicable where a district court judgment is registered under § 1963. 721 F.2d at 1273. In *Matanuska*, the plaintiff obtained a judgment in the United States District Court for the District of Alaska on July 26, 1956 and registered it pursuant to § 1963 in the Western District of Washington on September 10, 1964. Registration of the judgment was timely under the laws of Alaska, the rendering state, where the life of a judgment is ten years. However, under the laws of Washington, the registering state, a foreign judgment was not enforceable or registrable after the expiration of six years following its entry. We held that enforcement of the registered judgment was barred by the Washington statute of limitations. 365 F.2d at 360.

Relying on *Duchek*, Hilao posits that state law cannot divest a federal district court of jurisdiction to enforce its judgment. However, *Duchek* is inapposite. The Ducheks had obtained a judgment in the Central District of California, sued to set aside an allegedly fraudulent transfer of assets, and obtained another judgment that they sought to enforce. The

---

[6]*See also, e.g., Stanford v. Utley*, 341 F.2d 265, 266 (8th Cir. 1965) (looking to forum law for the limitations period on enforcement of judgments); *Home Port Rentals, Inc. v. Int'l Yachting Group*, 252 F.3d 399, 406 (5th Cir. 2001) (same).

defendants argued that because state law applied under Rule 69(a), the court lacked jurisdiction in light of a state venue statute that required a petition to enforce a judgment to be filed in the state superior court. We held that state legislation cannot withdraw federal jurisdiction. But this is neither the purpose, nor the effect, of applying the forum's statute of limitations for enforcing a judgment. It does not follow from the principle that state law cannot oust a federal court of subject matter jurisdiction, that no state law cutting off or curtailing a right — here, to enforce a judgment — may ever apply.

Stating the same thing somewhat differently, Hilao proposes that a federal judgment is renewed, and thereby extended, every time it is registered under § 1963 in another court. We agree with part of what she says: registering a judgment under § 1963 is the functional equivalent of obtaining a new judgment of the registration court. *See, e.g.*, *Matanuska*, 365 F.2d at 360; *Marx*, 721 F.2d at 1273. The effect is to allow *that* judgment, i.e., the newly registered judgment, to be enforced for the period allowed by the law of *that* forum, i.e., the state of registration, *if* the judgment were live, and thus registerable, at the time when it was registered. However, Hilao points to no authority suggesting that registration in one district — even if accomplished when the judgment was live — "extends" the statute of limitations in all districts.

**[8]** Hilao maintains that the clock starts running on federal judgments after the time for appeal has expired. While this is true for many purposes such as finality of judgments, *see, e.g.*, *Calderon v. United States District Court*, 128 F.3d 1283, 1286 n.2 (9th Cir. 1997), *overruled on other grounds by* 163 F.3d 530 (9th Cir. 1998), *abrogated on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003), the question here is the judgment's longevity. HRS § 657-5 provides that the limitations period begins to run on "the date the original judgment or decree was rendered." It does not say ten years from the date of entry *plus* however much time it takes to appeal.[7]

---

[7]HRS § 657-5 caps the life of a judgment (properly extended) at twenty years, running from the same point: "A court shall not extend any judg-

Consistent with Hawai'i's policy that judgment creditors have ten years to attempt to collect from the date the judgment is rendered, enforcement of the MDL 840 Judgment began immediately.

Neither *Borer v. Chapman*, 119 U.S. 587 (1887), nor *Home Port*, upon which Hilao rely, requires a different result. In *Borer*, the Court was concerned with a judgment entered *nunc pro tunc* whose terms were changed from the original judgment, and concluded that the statute of limitations did not begin to run until the judgment was in a form to be enforced. 119 U.S. at 602. *Home Port* noted that if a judgment is properly registered in one state, it may be enforced within the limitation period of that state even though the time for enforcement has run in the rendering state. In this context, the court characterized as "clearly specious" a contention that the rendering state's limitations period (which the defendant counted from the date of entry) applied. 252 F.3d at 406. While the statement can be read as critical of *both* contentions, i.e., that the rendering state's statute of limitations applied (there is no suggestion in *Home Port* that the registering state borrowed the rendering state's statute) *and* that the rendering state started counting from entry instead of after appeal, the court does not purport to adopt a rule that would be pertinent here.

Hilao contends, and the district court's order states, that HRS § 657-5 applies only to "domestic" judgments rendered by Hawai'i state courts. However, when a federal court borrows the most analogous state statute of limitations as a matter of federal law, the loan cannot turn on what the "most analogous" state statute says about its own applicability. *See, e.g.*, *Home Port Rentals*, 252 F.3d at 403 n.5 (holding that a Louisiana statute of limitations which referred only to a

---

ment or decree beyond twenty years from the date of the original judgment or decree."

" 'money judgment rendered by a trial court of this State' " applied to judgments rendered by a federal district court in Louisiana); *Stanford*, 341 F.2d at 266 & n.2 (concluding that a Mississippi statute of limitations which referred to " '[a]ll actions founded on any judgment or decree rendered by any court of record in this state' " applied to a judgment rendered by a federal court in Mississippi).

Alternatively, Hilao submits that the running of the Hawai'i period of limitations was tolled by her collection efforts, and that in any event, good cause existed to extend the judgment for ten years because Marcos had a pattern and practice of fraudulently secreting his assets. Whether or not this is so, the extension was not sought before the MDL 840 Judgment expired. HRS § 657-5 contains no provision for revival, and the Hawai'i Supreme Court has held that its time limits are absolute. *Wiig*, 921 P.2d at 120 (ruling that the existence of other enforcement actions does not toll the time limits mandated by HRS § 657-5).

**[9]** We conclude that the district court erred in extending the judgment pursuant to a request that was not made within ten years after the original judgment was rendered. None of the proffered reasons for bypassing this rule of Hawai'i law is convincing. Accordingly, having reversed the orders denying intervention as of right, and to appeal, and having considered the merits of the relief Hilao sought and obtained in the District of Hawaii, we vacate the court's order of June 27, 2006.

REVERSED IN PART; VACATED IN PART.